WCI, INC., D.B.A. CHEEKS, APPELLEE, *v.* OHIO LIQUOR
CONTROL COMMISSION, APPELLANT.

[Cite as *WCI, Inc. v. Ohio Liquor Control Comm.*,
116 Ohio St.3d 547, 2008-Ohio-88.]

(No. 2006–1360—Submitted September 12, 2007—Decided January 17, 2008.)

————————

————————

O'CONNOR, J.

{¶ 1} In this appeal we are asked to determine whether the Ohio Liquor Control Commission has authority under R.C. 4301.25(A)(1) to suspend a liquor permit when a former employee of the permit holder is convicted of a felony for an act committed while the former employee was employed by the permit holder. We hold that the statute does not authorize suspension of the permit under these circumstances.

### Relevant Background

{¶ 2} Appellee, WCI, Inc. ("WCI"), operates an adult nightclub in West Carrollton, Ohio. On February 6 and February 13, 2003, detectives from the Montgomery County Sheriff's Office were conducting undercover drug buys at the nightclub and made two separate purchases of cocaine from Brooke Orshoski, a dancer who was working at the club. WCI fired Orshoski that same month. Orshoski was subsequently indicted, and she was convicted of felony drug trafficking on October 20, 2003.

{¶ 3} On January 21, 2004, the Ohio Liquor Control Commission issued violation notices to WCI informing it that it was in violation of Ohio liquor laws, in part because of Orshoski's felony conviction. The commission subsequently issued a notice of hearing regarding Orshoski's violation. The hearing was held on May 19, 2004. At the hearing, WCI's manager testified that he terminated Orshoski before she was even indicted for the crime because he suspected that she was using or dealing drugs on the premises. Nevertheless, the commission suspended WCI's liquor permit for 30 days pursuant to R.C. 4301.25(A)(1), due to the commission's interpretation that it is irrelevant for purposes of the statute whether or not the permit holder still employed the employee at the time of the conviction.

{¶ 4} WCI appealed that order to the Franklin County Court of Common Pleas and obtained a stay of the suspension. The trial court affirmed the commission's order with respect to the suspension related to Orshoski's conviction. On appeal, the Tenth District Court of Appeals reversed the judgment and remanded the matter to the trial court with instructions that it order the commission to dismiss its case. We accepted the commission's discretionary appeal to determine whether a former employee's conviction could be used to suspend a permit holder's liquor license pursuant to R.C. 4301.25(A)(1).

### Analysis

{¶ 5} The issue presented is whether the commission was authorized under R.C. 4301.25(A)(1) to suspend WCI's liquor permit. R.C. 4301.25(A) states:

{¶ 6} "The liquor control commission may suspend or revoke any permit * * * for the following causes:

{¶ 7} "(1) Conviction of * * * the holder's agent or employee * * * for a felony."[1]

---

1. This is the current version of R.C. 4301.25(A), which differs slightly from the version that was in effect at the time of the conviction in this case. See Am.Sub.H.B. No. 402, 147 Ohio Laws, Part II, 3310, 3325. The differences between the two versions are not substantive with respect to this case and do not alter our analysis herein.

{¶ 8} In this case, WCI fired Orshoski well before she was convicted in October 2003. WCI contends that because Orshoski was not an employee *at the time of her conviction*, as contrasted with the time of the unlawful act underlying the conviction, the commission lacked authority under the statute to suspend WCI's permit.

{¶ 9} We agree with WCI and the opinion of the court of appeals in this case, which relies on *Waterloo, Inc. v. Ohio Liquor Control Comm.*, 10th Dist. No. 02AP–1288, 2003-Ohio-3333, 2003 WL 21468904, and *Shotz Bar & Grill, Inc. v. Ohio Liquor Control Comm.*, 10th Dist. No. 02AP–1141, 2003-Ohio-2659, 2003 WL 21196842 (Bowman, J., concurring). These opinions are grounded in the recognition that R.C. 4301.25(A)(1) is unambiguous and that under the plain meaning of the statute, the conviction must occur during the employee's employment with the permit holder.[2] See *Waterloo* at ¶ 10; *Shotz Bar & Grill* at ¶ 51 and 53. By its plain terms, the statute does not address a conviction of a former employee of a permit holder.

{¶ 10} The commission ignores the plain meaning of the statute and would have us hold that the statute means something other than what it says. The commission's position is predicated primarily on its belief that if the statute did require the convicted felon to be employed by the permit holder at the time of conviction, then permit holders would be able to allow their employees to engage in illegal activities but avoid license suspension by simply terminating the employees before they are convicted.

{¶ 11} This interpretation is wrong for two reasons. First, when a statute is unambiguous, we should not attempt to determine what the legislature intended, but should instead merely apply the law as written. *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 105–106, 65 O.O.2d 296, 304 N.E.2d 378. And second, the commission's fear that permit holders could avoid penalties by firing employees before they are convicted is unfounded.

{¶ 12} Ohio Adm.Code 4301:1–1–52(B) prohibits a wide range of misconduct. It provides:

{¶ 13} "[N]o permit holder, his agent, or employee shall knowingly or willfully allow in and upon his licensed premises any persons to:

{¶ 14} "(1) Engage in any disorderly activities;[3]

---

2. The version of R.C. 4301.25(A)(1) in dispute in both *Waterloo* and *Shotz Bar & Grill* was the same as that at issue in this case.

3. "Disorderly activities" are defined by the regulation as acts that "harass, threaten or physically harm another person including threats or other menacing behavior, fighting, assaults and brawls or any violation as defined [in] section 2917.11 of the Revised Code [the statute that defines 'disorderly conduct']."

{¶ 15} "(2) Appear in a state of nudity;

{¶ 16} "(3) Engage in sexual activity as * * * defined in Chapter 2907 of the Revised Code;

{¶ 17} "(4) Commit public indecency, as * * * defined in Chapter 2907 of the Revised Code;

{¶ 18} "(5) Allow in, upon or about the licensed permit premises, or engage in or facilitate in, the possession, use, manufacture, transfer, or sale of any dangerous drug, controlled substance, narcotic, harmful intoxicant, counterfeit controlled substance, drug, drug paraphernalia, or drug abuse instrument as * * * defined in Chapter 2925 of the Revised Code.

{¶ 19} "(6) Solicit for value, or possess, buy, sell, use, alter or transfer, or allow to be solicited, possessed, bought, sold, used, altered, or transferred for value USDA food stamp coupons, electronic benefit transfer (EBT) cards, WIC program benefit vouchers, or other electronically transmitted benefits, in a manner not specifically authorized by the Food Stamp Act of 1977, or the Child Nutrition Act of 1966. * * *

{¶ 20} "(7) Obtain or exert control over property or services of another, with purpose to deprive the owner thereof, without the consent of the owner or person authorized to consent, or by deception, fraud or threat. Nor shall any permit holder, his agent, or employee, use the licensed permit premises to receive, retain, or dispose of property of another, knowing or having reasonable cause to believe such property has been obtained through the commission of a theft offense."

{¶ 21} Pursuant to this section, the triggering event for sanctions is not the employee's conviction but the permit holder's awareness of the employee's illegal conduct. Thus, the commission can punish a permit holder for its employee's behavior, regardless of whether the employee works for the permit holder when he or she is convicted.

{¶ 22} There must be a reason, therefore, why the commission may sanction a permit holder for both a conviction of an employee (R.C. 4301.25(A)(1)) and the actions of an employee that underlie the conviction (Ohio Adm.Code 4301:1–1–52). We maintain that Ohio Adm.Code 4301:1–1–52 is designed to prevent exactly what the commission in this case fears would result from the interpretation of R.C. 4301.25(A)(1) espoused in *Waterloo* and *Shotz Bar & Grill*: It prevents a permit holder from allowing criminal conduct by its employees and then avoiding sanctions by firing the employees after they get caught but before they are convicted.

{¶ 23} By their terms, the statute and the Administrative Code section take into account that a permit holder has no control over whether a former employee

is convicted of illicit conduct in the permit holder's establishment but does have control over the continued employment of its employees. By sanctioning only those permit holders who fail to take remedial measures to ensure that the liquor establishment is not used for illicit behavior (by firing employees when it discovers that they are engaged in such behavior), R.C. 4301.25(A)(1) and Ohio Adm.Code 4301:1–1–52 provide protection to innocent permit holders.

{¶ 24} Although it is well settled that a liquor permit does not create a property right subject to traditional due process, *State ex rel. Zugravu v. O'Brien* (1935), 130 Ohio St. 23, 27, 3 O.O. 74, 196 N.E. 664, it would be unfair not to recognize that this particular permit holder terminated its employee upon learning of her criminal conduct—likely in an effort to protect its own interest as well as its patrons. If we were to adopt the commission's position, however, we would be placing the future of an establishment's liquor permit in the hands of the employee and the employee's defense counsel.

{¶ 25} As explained above, the court of appeals' interpretation of R.C. 4301.25(A)(1) is faithful to the text and to the regulatory scheme as a whole. Moreover, unlike the commission's interpretation, it does not require inserting words into the statute, which courts are forbidden to do. *Cleveland Elec. Illum. Co. v. Cleveland* (1988), 37 Ohio St.3d 50, 524 N.E.2d 441, paragraph three of the syllabus.

{¶ 26} Accordingly, we hold that the commission does not have authority under R.C. 4301.25(A)(1) to suspend or revoke a permit holder's liquor permit when a former employee of the permit holder is convicted of a felony for an act committed while employed by the permit holder.

Judgment affirmed.

MOYER, C.J., and LUNDBERG STRATTON and LANZINGER, JJ., concur.

PFEIFER, O'DONNELL, and CUPP, JJ., dissent.

---

**CUPP, J., dissenting.**

{¶ 27} Because I believe that the Liquor Control Commission has authority under R.C. 4301.25(A)(1) to suspend a liquor permit when a former employee of the permit holder is convicted of a felony for an act committed by that employee while employed by the permit holder, I respectfully dissent.

{¶ 28} In contrast to the majority, I find nothing in the statute that requires that the conviction occur during the offending employee's employment. It is a basic presumption in statutory construction that the General Assembly is not presumed to do a vain or useless thing and that when language is inserted in a statute it is inserted to accomplish some definite purpose. *State ex rel. Cleveland*

*Elec. Illum. Co. v. Euclid* (1959), 169 Ohio St. 476, 479, 8 O.O.2d 480, 159 N.E.2d 756. See also R.C. 1.47.

{¶ 29} As the commission argued before this court, reading the statute to require that the conviction and employment must be concurrent will allow a permit holder to easily evade its responsibility to maintain a permit premises free of illegal employee activity. A permit holder who knows of, or should know of, felonious employee conduct will now be able to allow the conduct to continue until the employee is caught. Then, the permit holder can insulate itself from any consequences simply by firing the employee before he or she is convicted. Thus, the majority's reading of the statute, in effect, divests the commission of its authority to proceed under R.C. 4301.25(A)(1) and renders the statute essentially meaningless.

{¶ 30} The majority contends that the Ohio Administrative Code prevents this type of mischief by permit holders. According to the majority, the commission has authority under Ohio Adm.Code 4301:1-1-52(B) to suspend a permit even if the permit holder fires the offending employee prior to his or her conviction, because the "triggering event for sanctions" under that provision is the permit holder's awareness of the conduct, not the conviction. Majority Opinion at ¶ 21. However, the list of prohibited conduct contained in Ohio Adm.Code 4301:1-1-52(B) is limited, and there are numerous felonies not covered by the administrative provision. There are many situations in which the commission could, in fact, be stripped of its ability to act. And although the commission could have elected to proceed in this case under the administrative regulation, it was not required to do so, because the conviction allowed it to proceed under R.C. 4301.25.

{¶ 31} The General Assembly's decision to include a conviction requirement in R.C. 4301.25(A)(1) was not without purpose. By requiring a conviction before the commission may take action against a permit holder, the statute protects the permit holder from losing its license without proof beyond a reasonable doubt that an employee or former employee actually committed the felonious act. Additionally, the statute states that the commission "*may* suspend or revoke" the permit. (Emphasis added.) Thus, if the commission determines that the permit holder did not know or have reason to know of its employee's illegal conduct, the commission is not required to suspend or revoke the holder's permit.

{¶ 32} I believe that the General Assembly gave statutory authorization for the commission to act against permit holders under circumstances similar to those in this case to further the public-policy goal of *preventing* felonious activity in liquor establishments. Clearly the statute places a burden on the permit holder, who would be in the best position to prevent such activity. It imperils the holder's potential to sell liquor if the holder fails to take adequate preventive measures against felonious conduct by its employees and agents. In this case, the cocaine

sales that led to Orshoski's felony conviction occurred inside the establishment and while Orshoski was working. Thus, the resulting conviction falls squarely within the scope of R.C. 4301.25(A)(1). Contrary to the majority's conclusion, there is nothing in the language of R.C. 4301.25(A)(1) requiring the conviction to be contemporaneous with employment.

{¶ 33} For the foregoing reasons, I respectfully dissent, and I would hold that the commission had authority under R.C. 4301.25(A)(1) to suspend WCI's permit.

PFEIFER and O'DONNELL, JJ., concur in the foregoing opinion.

_____

Buckley King, L.P.A., Chris O. Paparodis, and Gary A. Gillett, for appellees.

Marc Dann, Attorney General, Elise Porter and Stephen P. Carney, Deputy Solicitors, Hilary R. Damaser, Assistant Solicitor, and Charles E. Febus, Assistant Attorney General, for appellant.