In re Ronald B. DEPASCALE, Debtor.

No. 13–40768.

United States Bankruptcy Court, N.D. Ohio.

Aug. 8, 2013.

Robert J. Delchin, Biales Delchin Law, Mentor, OH, for Debtor.

Melody Dugic Gazda, Richard G. Zellers & Associates, Canfield, OH, for Trustee.

Richard G. Zellers, Richard G. Zellers & Associates, Canfield, OH, Trustee.

## MEMORANDUM OPINION REGARDING MOTION TO AVOID JUDICIAL LIENS

KAY WOODS, Bankruptcy Judge.

Consistent with established precedent, this Court has long applied the Ohio Homestead Exemption amount in effect on the date a voluntary bankruptcy petition is filed in considering avoidance of prior filed judicial liens. The Court today confronts a matter of first impression—*i.e.*, whether Ohio Revised Code ("O.R.C.") § 2329.66,

as amended by Substitute House Bill No. 479 ("H.B. 479"), dictates a contrary result.

This cause is before the Court on Amended Motion of Debtor to Avoid Judgment Liens of Unifund CCR Partners and Landmark National II, Corp. Pursuant to Section 522(f)(1)(A) of the Bankruptcy Code ("Motion to Avoid Liens") (Doc. # 13) filed by Debtor Ronald B. Depascale on May 3, 2013. The Debtor requests the Court to avoid two judicial liens on the basis that they impair the Debtor's homestead exemption as set forth in O.R.C. § 2329.66(A)(1)(b) ("Homestead Exemption"). The Debtor contends that he is entitled to the Homestead Exemption in the amount of $132,900.00, which is the amount in O.R.C. § 2329.66 in effect when the Debtor filed his petition. The Debtor seeks to avoid (i) judgment lien filed January 25, 2010 by Unifund CCR Partners ("Unifund") in the amount of $2,185.49 plus interest and costs ("Unifund Lien");[1] and (ii) judgment lien filed March 16, 2011 by Landmark National II, Corp. ("Landmark") in the amount of $136,348.16 plus interest and costs ("Landmark Lien").

Landmark filed Amended Objection to Debtor's Motion to Avoid Lien of Landmark National II, Corp. ("Objection") (Doc. # 16) on May 10, 2013. In the Objection, Landmark argues that the Debtor may only claim the Homestead Exemption in the amount of $23,000.00, which is the amount in O.R.C. § 2329.66 in effect when Landmark filed the Landmark Lien.[2] Landmark asserts that the increased Homestead Exemption amount in H.B. 479 was not intended to apply to judicial liens filed before the effective date of March 27, 2013. Specifically, Landmark relies on the following language from Section 3 of H.B. 479 to support its position:

> The amendments made by this act to sections 2329.66 and 2329.661 of the Revised Code *shall apply to claims accruing on or after the effective date of this act.... This act is not intended to impair any secured or unsecured creditors' claims that accrue prior to the effective date of this act.*

H.B. 479 at 61 (emphasis added). Because the Landmark Lien was recorded before the March 27, 2013 effective date of H.B. 479, Landmark contends that the Landmark Lien is avoidable only in part.

On June 6, 2013, the Debtor filed Response to Landmark National II, Corp.'s Amended Objection to Avoid Judgment Lien ("Response") (Doc. # 24). On June 12, 2013, Landmark filed Supplement to Amended Objection to Debtor's Motion to Avoid Lien of Landmark National II, Corp. to File Real Property Appraisal ("Supplement") (Doc. # 26), to which was attached a multi-page appraisal indicating that the value of the Debtor's Residence (as defined *infra* at 4) is $228,000.00.

The Court held a hearing on the Motion to Avoid Liens on June 13, 2013, at which appeared Robert J. Delchin, Esq. on behalf of the Debtor and Craig W. Relman, Esq. on behalf of Landmark. At the hearing, the parties stipulated that, if the Debtor is entitled to a Homestead Exemption in the amount of $132,900.00, then all judgment liens, including the Landmark Lien, are avoidable. If the Debtor is entitled to a lesser Homestead Exemption amount, the parties agreed that the Court will need to conduct an evidentiary hearing to determine the fair market value of the Debtor's Residence.

---

1. Unifund has not opposed the Motion to Avoid Liens.

2. The actual Homestead Exemption amount in effect on March 16, 2011 was $21,625.00.

Landmark provides no basis for $23,000.00 as the exemption amount other than to indicate it was "[a]djusted for cost of living." (Obj. at 2.)

Having considered the Motion to Avoid Liens, the Objection, the Response, the Supplement, applicable statutes and case law, the Court will grant the Motion to Avoid Liens for the reasons set forth herein.

This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and the general order of reference (Gen. Order No. 2012–7) entered in this district pursuant to 28 U.S.C. § 157(a). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1391(b), 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K). The following constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## I. BACKGROUND

The Debtor filed a voluntary petition pursuant to chapter 7 of Title 11, United States Code, on April 9, 2013 ("Petition Date"). The Debtor resides at 6019 New London Road, Ashtabula, Ohio ("Residence") (Doc. # 1 at 1), which he claims has a fair market value of $144,900.00. (Mot. to Avoid Liens at 2.) The Debtor represents that his Residence is subject to the following encumbrances: (i) a mortgage in favor of HSBC/Ocwen Loan Servicing ("HSBC") in the amount of $143,869.42,[3] which was incurred in 2007; (ii) the Unifund Lien; and (iii) the Landmark Lien. (*Id.*)

## II. ARGUMENTS OF THE PARTIES

### A. The Debtor's Arguments

The Debtor claims that he is entitled to the Homestead Exemption in his Residence in the amount of $132,900.00, which is the amount in O.R.C. § 2329.66 in effect as of the Petition Date. The Debtor argues that the plain language of O.R.C. § 2329.66 fixes a debtor's interest in the Homestead Exemption on the date that a debtor files a bankruptcy petition. The Debtor rejects the contention that Section 3 of H.B. 479 limits the increased exemption amount only to judicial liens filed after the effective date of the amendments. Rather, according to the Debtor:

> [Section 3] simply means that a debtor cannot use the new homestead exemption to retroactively go get his/her money back after a creditor has already executed upon an old debt.... That is, what matters is when the debt is executed upon, i.e., satisfied, not when it is incurred.

(*Id.* at 3.) The Debtor further notes that, when the Homestead Exemption was previously amended to increase in amount, the increased exemption amount applied to preexisting liens. The Debtor thus contends that the amount of $132,900.00 applies to all debts, including those incurred prior to the enactment of H.B. 479.

The Debtor relies on a letter dated March 15, 2013 from Mark R. Schweikert, Executive Director of the Ohio Judicial Conference, to Mark Flanders, Director of the Ohio Legislative Service Commission ("Judicial Conference Letter"),[4] which increased the amount of the Homestead Exemption to $132,900.00 effective April 1, 2013.[5] The Debtor argues that the Ohio

---

**3.** In Amended Schedule D, the Debtor lists $144,102.51 as the amount that he owed on the mortgage. (*See* Doc. # 10.)

**4.** *See* Ltr. from Mark R. Schweikert, Exec. Dir., Ohio Jud. Conf., to Mark Flanders, Dir., Ohio Legis. Serv. Comm'n (Mar. 15, 2013), http://www.ohiojudges.org (follow "Publications" hyperlink under "Resources"; then fol-

low "Exemptions" hyperlink). The Judicial Conference Letter is attached to the Motion to Avoid Liens at pages 9–10.

**5.** O.R.C. § 2329.66(B) provides for the Ohio Judicial Conference to adjust the dollar amount of exemptions in § 2329.66(A) on April of each third calendar year after 2010.

Judicial Conference's failure to publish adjustments for the former exemption amounts demonstrates its understanding that the former Homestead Exemption amount no longer exists. Finally, the Debtor argues that the former exemption amounts no longer apply because H.B. 479 repealed the prior version of O.R.C. § 2329.66.

Applying the $132,900.00 Homestead Exemption, the Debtor contends that the Landmark Lien and the Unifund Lien are avoidable. Specifically, the Debtor asserts that his Residence had a fair market value of $144,900.00 on the Petition Date, as evidenced by an April 26, 2013 market appraisal attached as Exhibit A to the Motion to Avoid Liens. In addition to the Landmark Lien and the Unifund Lien, the Debtor states that HSBC holds a mortgage against his Residence in the amount of $143,869.42. The Debtor contends that the HSBC mortgage and the Homestead Exemption in the amount of $132,900.00 do not leave any equity in the Residence to which the Unifund Lien and the Landmark Lien attach and, thus, both judicial liens may be avoided pursuant to 11 U.S.C. § 522(f)(1)(A).

### B. Landmark's Arguments

Landmark argues that the Debtor may only claim the Homestead Exemption in the amount of $23,000.00—i.e., the amount applicable when the Landmark Lien was filed. Landmark relies on Section 3 of H.B. 479 to suggest that the Debtor may not claim the increased Homestead Exemption amount. According to Landmark:

> [T]he last sentence of [Section 3] ... states that the law is not intended to impair secure [sic] or unsecured claims that accrue prior to the effective date of the statute. This language strongly

suggests an intent for the new homestead exemption to be perspective [sic] only.

(Obj. at 2.)

Landmark further argues that there must be a clear legislative intent for an act to apply retroactively, which intent is absent from H.B. 479. Landmark states that to apply H.B. 479 retroactively would affect its substantive rights—i.e., its ability to enforce its judicial lien—in violation of the Ohio Constitution. Landmark contends that the Debtor is limited to the Homestead Exemption in the amount of $23,000.00 because the Landmark Lien was filed prior to the March 27, 2013 effective date of H.B. 479.

In addition to challenging the amount of the applicable Homestead Exemption, Landmark (i) disputes the Debtor's valuation of the Residence; (ii) contends that the Residence is worth at least $229,-000.00;[6] and (iii) requests access to the Residence to conduct its own appraisal.[7] Using its contentions that (i) the residence has a value of $229,000.00; and (ii) the Homestead Exemption is limited to $23,000.00, Landmark argues that there is $59,945.09 in equity in the Residence to which the Landmark Lien attaches. Accordingly, Landmark contends that its lien is avoidable only in part.

### III. LAW & ANALYSIS

### A. BANKRUPTCY CODE § 522 AND THE HOMESTEAD EXEMPTION

The Motion to Avoid Liens is based on 11 U.S.C. § 522(f), which states, in pertinent part:

> (1) Notwithstanding any waiver of exemptions but subject to paragraph (3),

---

**6.** Landmark's Supplement values the Residence at $228,000.00.

**7.** Based upon Landmark's submission of the Supplement, it appears that Landmark no longer needs access to the Residence.

the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(A) a judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523(a)(5);
* * *

(2) (A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—

(i) the lien;

(ii) all other liens on the property; and

(iii) the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. § 522(f) (West 2013). To determine if a debtor has an exemption that is impaired, it is first necessary to determine the exemption(s) that the debtor is entitled to claim.

11 U.S.C. § 522(b) sets forth the exemptions to which a debtor is entitled:

(1) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection. . . .

(2) Property listed in this paragraph is property that is specified under subsection (d), *unless the State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize.*

(3) Property listed in this paragraph is—

(A) subject to subsections (*o* ) and (p), *any property that is exempt under*

Federal law, other than subsection (d) of this section, or *State or local law that is applicable on the date of the filing of the petition. . . .*

*Id.* § 522(b) (emphasis added).

Ohio has opted out of the federal exemptions in § 522. O.R.C. § 2329.662 (West 2013) ("[T]his state specifically does not authorize debtors who are domiciled in this state to exempt the property specified in the 'Bankruptcy Reform Act of 1978,' 92 Stat. 2549, 11 U.S.C. 522(d)."). The Ohio Homestead Exemption is contained in O.R.C. § 2329.66, which states, in pertinent part:

(A) Every person who is domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order, as follows:
* * *

[ (1) ](b) In the case of all other judgments and orders, the person's interest, not to exceed one hundred twenty-five thousand dollars, in one parcel or item of real or personal property that the person or a dependent of the person uses as a residence.
* * *

(B) On April 1, 2010, and on the first day of April in each third calendar year after 2010, the Ohio judicial conference shall adjust each dollar amount set forth in this section to reflect any increase in the consumer price index for all urban consumers . . . for the three-year period ending on the thirty-first day of December of the preceding year. . . .

The Ohio judicial conference shall prepare a memorandum specifying the adjusted dollar amounts. The judicial conference shall transmit the memorandum to the director of the legislative service commission, and the director shall publish the memorandum in the register of Ohio. . . .
* * *

(D) For purposes of this section, "interest" shall be determined as follows:

(1) In bankruptcy proceedings, as of the date a petition is filed with the bankruptcy court commencing a case under Title 11 of the United States Code[.]

O.R.C. § 2329.66(A)(1)(b), (B), (D)(1) (West 2013).

For several years prior to 2008, the amount of the Ohio Homestead Exemption was limited to $5,000.00. On September 30, 2008, Substitute Senate Bill No. 281 ("S.B. 281"),[8] which amended O.R.C. § 2329.66, became effective. Section 1 of S.B. 281 amended O.R.C. § 2329.66(A)(1)(b) to increase the amount of the Homestead Exemption to $20,200.00. S.B. 281 at 2. S.B. 281 also added subsection (B) to O.R.C. § 2329.66, which provided for adjusting the amounts of the Homestead Exemption on April 1, 2010 and on the first day of April every third calendar year after 2010—e.g., April 1, 2013. As a consequence, the Homestead Exemption increased to $21,625.00 effective April 1, 2010. Finally, Section 2 of S.B. 281 directed "[t]hat existing sections 2329.66 . . . of the Revised Code are hereby repealed." *Id.* at 29.

In 2012, the 129th Ohio General Assembly enacted H.B. 479,[9] which became effective on March 27, 2013.[10] Section 1 of H.B. 479 amended O.R.C. § 2329.66 to increase the amount of the Homestead Exemption from $21,625.00 to $125,000.00.[11] H.B. 479 at 1–2, 21. Section 2 of H.B. 479, like Section 2 of S.B. 281, repealed the existing version of § 2329.66. *Id.* at 61. Section 3 of H.B. 479,[12] on which this controversy centers, states, in pertinent part:

> The amendments made by this act to sections 2329.66 and 2329.661 of the Re-

**8.** S.B. 281 is available at: http://www.legislature.state.oh.us/BillText127/127_SB_281_EN_N.pdf.

**9.** H.B. 479 is available at: http://www.legislature.state.oh.us/BillText129/129_HB_479_EN_N.pdf.

**10.** Information concerning the legislation discussed in this Memorandum Opinion, including the effective dates of the legislation, is available at: http://www.lsc.state.oh.us/bills/previousga.htm.

**11.** Pursuant to O.R.C. § 2329.66(B), the amount of the Homestead Exemption increased to $132,900.00 on April 1, 2013. *See* Judicial Conf. Ltr.

**12.** Section 3 in its entirety reads:

> The amendments made by this act to section 1336.04 of the Revised Code shall apply to transfers made on or after the effective date of this act. The amendments made by this act to sections 2329.66 and 2329.661 of the Revised Code shall apply to claims accruing on or after the effective date of this act. The amendments made by this act to section 5815.36 of the Revised Code shall apply to disclaimers made on or after the effective date of this act. Section 5815.37 of the Revised Code as enacted by this act shall apply to conveyances made on or after the effective date of this act. The application of the amendments made by this act to section 2131.08 of the Revised Code is provided [for] in division (F) of section 2131.08 of the Revised Code as amended by this act. The application of the amendments made by this act to section 2131.09 of the Revised Code is provided for in divisions (C) and (E) of section 2131.09 of the Revised Code as amended by this act. The application of the sections of Chapter 5816. of the Revised Code as enacted by this act is provided for in section 5816.14 of the Revised Code as enacted by this act. Sections 1319.07 to 1319.09 of the Revised Code, as enacted by this act, apply to the enforcement and interpretation of all non-recourse loan documents in existence on, or entered into on or after, the effective date of this act. This act is not intended to impair any secured or unsecured creditors' claims that accrue prior to the effective date of this act.
> H.B. 479 at 61.

vised Code shall apply to claims accruing on or after the effective date of this act.... This act is not intended to impair any secured or unsecured creditors' claims that accrue prior to the effective date of this act.

*Id.*

## B. The Applicable Amount of the Homestead Exemption

■ Pursuant to § 522(f)(1)(A), the Debtor may avoid the Landmark Lien if (i) the lien is attached to the Debtor's interest in property; (ii) the lien impairs an exemption to which the Debtor would otherwise be entitled; and (iii) the lien is a judicial lien. *In re Armenakis*, 406 B.R. 589, 604 (Bankr.S.D.N.Y.2009). There is no dispute that (i) the Landmark Lien attaches to the Debtor's interest in the Residence, which is property of the bankruptcy estate; (ii) the Landmark Lien is a judicial lien; and (iii) the Debtor is entitled to the Homestead Exemption. The only question is whether the Landmark Lien impairs the Debtor's Homestead Exemption; whether such exemption is impaired can only be resolved by determining the amount of the Homestead Exemption to which the Debtor is entitled.

### 1. The 2008 Amendments to the Homestead Exemption

This Court could find no cases interpreting whether the Homestead Exemption amount in amended O.R.C. § 2329.66(A)(1) is intended to apply to the present circumstances—*i.e.*, the avoidance of judicial liens that were filed before the effective date of H.B. 479 in a bankruptcy case filed after the effective date of the amendments. However, other than the adjusted dollar amount, the newly amended O.R.C. § 2329.66(A)(1), as it relates to judicial liens on residential real property, is identical to the prior version of the statute.[13] Cases applying the 2008 increased Homestead Exemption are therefore instructive.

The 2008 amendments appear to have been universally applied to bankruptcy cases filed after their effective date to avoid liens filed prior to their enactment. *See, e.g., Simon v. Citimortgage, Inc. (In re Doubov)*, 423 B.R. 505, 514 (Bankr. N.D.Ohio 2010) ("The homestead exemption is determined as of the date on which the debtors filed their petition."); *In re Jaber*, 406 B.R. 756, 762 (Bankr.N.D.Ohio 2009) ("Effective on September 30, 2008, the bill increased the amount of a debtor's homestead exemption from $5,000.00 to $20,200.00.... Because the law became effective in September 2008, and the debtors filed their petition on January 8, 2009, the current version of Ohio Revised Code § 2329.66 applies to these debtors."); *cf. Corzin v. Bank of N.Y. (In re Swartz)*, Adv. No. 09–5026, 2009 Bankr.LEXIS 5615, *15 (Bankr.N.D.Ohio June 26, 2009) (sustaining objection to debtors' claim to increased exemption amount where petition filed pre–2008 amendments).

Courts construing the Ohio Homestead Exemption prior to the 2008 amendments have likewise held that a debtor is entitled to the exemption amount in effect on the petition date. *See, e.g., In re Pier*, 310 B.R. 347, 354 (Bankr.N.D.Ohio 2004) ("[T]he terms of § 522 provide that the petition date establishes whether a debtor is entitled to an exemption[.]"); *In re Lude*, 291 B.R. 109, 110 (Bankr.S.D.Ohio 2003) ("The right to claim an exemption

---

**13.** Section 2 of H.B. 479 expressly repealed the prior version of O.R.C. § 2329.66. This is consistent with the requirement in Article II, § 15 of the Ohio Constitution that a law amending a section of the O.R.C. must repeal the preexisting section. *See* Ohio Const. Art. II, § 15(D) (West 2013) ("No law shall be revived or amended unless the new act contains the entire act revived, or the section or sections amended, *and the section or sections amended shall be repealed.*") (emphasis added).

from property of the bankruptcy estate arises and is fixed in a voluntary case on the date the petition is filed."); *see also In re Guikema*, 329 B.R. 607, 619 n. 8 (Bankr. S.D.Ohio 2005) (noting that post-petition changes in a debtor's factual circumstances or the law do not change the status of an exemption properly claimed as of the petition date).

Significantly, the Court found no cases where the Homestead Exemption of $5,000.00, which pre-dated the effective date of S.B. 281, was used to avoid a lien filed before September 30, 2008 in a bankruptcy case filed after that date. Thus, based upon the widespread application of the increased Homestead Exemption amount of $20,200.00 to bankruptcy cases filed on or after the effective date of S.B. 281, this Court does not see any impediment to applying the increased Homestead Exemption amount to bankruptcy cases filed on or after the effective date of H.B. 479, even if the lien to be avoided was recorded before that date.

### 2. *Decisions from Other Jurisdictions*

Cases in other jurisdictions have applied an increased homestead exemption amount to a debt incurred before the effective date of the amendment. In *In re Little*, Case No. 05–68281, 2006 WL 1524594, 2006 Bankr.LEXIS 1010 (Bankr.N.D.N.Y. Apr. 24, 2006), the bankruptcy court was tasked with determining whether the debtor's chapter 13 plan complied with the best interests test. The New York homestead exemption had increased from $10,000.00 to $50,000.00 on August 30, 2005. The debtors claimed that the court should apply the increased exemption amount, which was effective on the petition date. A secured creditor, whose debt was incurred prior to the enactment of the increased exemption amount, contended that the amendment did not apply retroactively to a debt incurred before the amendment's enactment.

The bankruptcy court in *Little* surveyed cases from various jurisdictions regarding the retroactive application of exemptions and found that such cases fell into two general categories: (i) limiting a debtor to the applicable exemptions at the time the claim arose; or (ii) allowing a debtor to use the exemptions in effect on the petition date, regardless of when the exemption laws were enacted. Cases that fell within the first category include: (i) *In re Sticha*, 60 B.R. 717, 719 (Bankr.D.Minn.1986) ("Parties to a secured transaction are entitled to rely upon the law in existence at the time of the transaction regarding interests in property that are determined by it."); and (ii) *In re Halub*, 25 B.R. 617 (Bankr.C.D.Cal.1982) (concluding that California law required a debtor be allowed the homestead exemption in effect at the time the debts arose, rather than on the petition date, because a court must look to the particular exemption statute and the construction placed on that statute by authoritative courts). Both of these cases predate the 1994 amendments to the Bankruptcy Code.

Cases that fell within the second category include: (i) *In re Betz*, 273 B.R. 313 (Bankr.D.Mass.2002) (applying exemption amount as of the petition date—even though the state statute subordinated the increased exemption to any lien, right or interest recorded or filed before the effective date—because § 522(c) does not provide that preexisting debts or liens receive special protection); (ii) *In re Skjetne*, 213 B.R. 274 (Bankr.D.Vt.1997) (holding that while Vermont law limited the increased exemption to debts incurred after its effective date, bankruptcy law expands the exemption to all prepetition debts, based upon § 522(b)(2) and (c)); (iii) *Bartlett v. Giguere (In re Bartlett)*, 168 B.R. 488 (Bankr.D.N.H.1994) (concluding that exemption rights are created by federal law, even though the state defines the amount

and items of exemption); and (iv) *In re Zahn,* 605 F.2d 323 (7th Cir.1979) (finding that the allowable exemption amount is that amount existing on the petition date because a debtor's property and the extent of available exemption rights must be determined at one common point in time).

The bankruptcy court in *Little* sided with courts in the second category and determined that (i) New York's increased homestead exemption amount applied retroactively; and (ii) § 522(b)(2) required the court to apply the law that was applicable on the date that the debtors filed their bankruptcy petition. As a consequence, the court allowed the debtors to use the increased exemption amount, which was in effect on their petition date.

Other cases, relying on § 522, have similarly held that the applicable exemption amount is the amount in effect as of the date a bankruptcy petition is filed. *See In re Willis,* Case No. 12–16372, 495 B.R. 856, 860, 2013 WL 2250428, *4 (Bankr. W.D.Wis. May 22, 2013) ("[11 U.S.C. § 522(b)(3)(A) ] additionally confirms that state law will be used as it existed on the petition date."); *In re Stewart,* 452 B.R. 726, 741 (Bankr.C.D.Ill.2011) (citing 11 U.S.C. § 522(b)(3)(A)) ("The policy expressed in the Bankruptcy Code is that property exemptions for opt-out states are determined by the laws of the state in effect on the petition date, no more and no less."); *In re Armenakis,* 406 B.R. 589, 605 (Bankr.S.D.N.Y.2009) (internal citations and quotations omitted) ("[F]ederal law governs the date on which the exemption come [sic] into play.... Applying the plain language of § 522(b)(3)(A) to the facts in this case, it is clear that the $10,000.00 exemption amount was applicable on the Petition Date, May 18, 2005, because it came before the Enactment Date, August 30, 2005.").

This Court agrees with the bankruptcy court in *Little* and other courts holding that the applicable homestead exemption amount is the amount in effect when a debtor files the bankruptcy petition. Section 522 explicitly provides that property exemptions for opt-out states are determined by the state law applicable "on the date of the filing of the petition." 11 U.S.C. § 522(b)(3)(A) (West 2013). O.R.C. § 2329.66 likewise states that a debtor's interest in property is determined as of the date a petition is filed with the bankruptcy court. O.R.C. § 2329.66(D)(1) (West 2013); H.B. 479 at 28. As a consequence, the interest of the Debtor in his Residence is protected by the Ohio Homestead Exemption in effect as of the Petition Date, which is $132,900.00.

### 3. Statutory Construction and Legislative Intent

Applying the Homestead Exemption amount in effect as of the Debtor's Petition Date is also consistent with established principles of statutory construction. "When confronted with an undecided question of state law, it is the function of this Court to make the 'best prediction, even in the absence of direct state law precedent, of what the State Supreme Court would do if it were confronted with the question.'" *In re Likes,* 406 B.R. 749, 754 (Bankr. N.D.Ohio 2009) (quoting *In re Alam,* 359 B.R. 142, 147 (6th Cir. BAP 2006)). The Supreme Court of Ohio requires that a court, in construing statutory language, must be primarily concerned with effectuating legislative intent. *Id.* (citing *State ex rel. Stoll v. Logan Cnty. Bd. of Elections,* 117 Ohio St.3d 76, 881 N.E.2d 1214, 1220 (2008)). A court first looks to the express language of an enacted statute to ascertain the legislature's intent. *See Drown v. Wells Fargo Bank, N.A. (In re Scott),* 424 B.R. 315, 330 (Bankr.S.D.Ohio 2009) (citing *Carnes v. Kemp,* 104 Ohio St.3d 629, 821 N.E.2d 180, 183 (2004)). If that statutory language is clear and unambiguous, the

court's inquiry ends. *See id.; see also State ex rel. Fenley v. Ohio Historical Soc'y*, 64 Ohio St.3d 509, 597 N.E.2d 120, 123 (1992) ("[W]here the terms of a statute are clear and unambiguous, the statute should be applied without interpretation.").

O.R.C. § 2329.66, as amended by H.B. 479, permits an individual to "hold exempt from a judgment lien … the person's interest, not to exceed one hundred twenty-five thousand dollars, in the exempted property." O.R.C. § 2329.66(A)(1)(a) (West 2013). The plain language of O.R.C. § 2329.66 further provides that a debtor's "interest" shall be determined "[in] bankruptcy proceedings, as of the date a petition is filed with the bankruptcy court commencing a case under Title 11 of the United States Code." *Id.* § 2329.66(D)(1). Thus, the express language of O.R.C. § 2329.66 makes clear that a debtor's interest in the exempted property is determined as of the petition date, and the Court need look no further.

■ Moreover, Section 3 of H.B. 479—upon which Landmark relies in an effort to apply the lesser Homestead Exemption amount to the Debtor's Residence—is uncodified law. "[U]ncodified law is law of a special nature that has a limited duration or operation and is not assigned a permanent Ohio Revised Code section number.... [I]t does not appear in the statutes in codified form." *Maynard v. Eaton Corp.*, 119 Ohio St.3d 443, 895 N.E.2d 145, 147 (2008) (internal quotations and citations omitted). While uncodified law is "part of the law of Ohio," *id.*, it should not be used to supplant explicit statutory language where the meaning of that statute is clear. *Wa. Envtl. Servs., LLC v. Morrow Cnty. Dist. Bd. of Health*, 10th Dist. No. 09AP–920, 2010-Ohio–2322, ¶ 21, 2010 WL 2091465 (Ohio Ct.App.2010) (citing *WCI, Inc. v. Ohio Liquor Control Comm'n*, 116 Ohio St.3d 547, 880 N.E.2d 901, 903 (2008)). As one Ohio court has explained:

[S]tatutes are released to the public in the form of officially codified enactments. The purpose of codification is to collect and embody in one statute all laws and parts of laws on the same subject. This purpose is not accomplished if, in order to ascertain what the law is, a researcher is required to refer to the printed original statutes, *i.e.*, Ohio Laws, as well as to the Revised Code.

*In re McKinnon*, 16 Ohio Misc.2d 4, 476 N.E.2d 1101, 1104 (Ohio Ct.Cl.1984), *rev'd on other grounds by In re Vaughn*, 91 Ohio Misc.2d 172, 698 N.E.2d 148, 150 (Ohio Ct.Cl.1997). Thus, Landmark cannot rely on the uncodified law in Section 3 of H.B. 479 to overcome the plain language of O.R.C. § 2329.66(D)(1) that a debtor's interest in the Homestead Exemption is determined as of the petition date.

■ Even if, *arguendo*, the uncodified law in Section 3 is evidence of the legislature's intent, the Court nevertheless finds that Landmark's reading of O.R.C. § 2329.66 is flawed. When interpreting a statute, courts must avoid illogical or absurd results and seek to construe the statute to operate sensibly. *See Brooks Capital Servs., LLC v. 5151 Trabue Ltd.*, 10th Dist. No. 12AP–30, 2012 Ohio App. LEXIS 3901, ¶ 20 (Ohio Ct.App. Sept. 27, 2012); *see also State ex rel. Carna v. Teays Valley Local Sch. Dist. Bd. of Educ.*, 967 N.E.2d 193, 198 (2012) ("Statutes must be construed, if possible, to operate sensibly and not to accomplish foolish results."). To avoid an absurd interpretation of a statute, the statute must be both internally coherent and externally consistent with other related provisions of the O.R.C. *See Brooks Capital*, 2012 Ohio App. LEXIS 3901, ¶ 23.

The inherent contradictions within Section 3 make it totally unworkable as a statement of legislative intent. The sec-

ond and last sentences of Section 3 of H.B. 479 state:

> The amendments made by this act to sections 2329.66 and 2329.661 of the Revised Code shall apply to claims accruing on or after the effective date of this act. . . . This act is not intended to impair any secured or unsecured creditors' claims that accrue prior to the effective date of this act.

H.B. 479 at 61. Section 3 of H.B. 479 does not have a plainly understood meaning because it is difficult to reconcile these two sentences.

For example, it is not clear whether the first reference to "claims accruing on or after the effective date of this act" means claims of exemption by the debtor or claims asserted by a creditor. The ellipse represents four sentences that refer to other parts of the O.R.C., rather than O.R.C. § 2329.66, so the reference in the last sentence to "secured or unsecured creditors' claims" is not particularly helpful in determining the meaning of the first reference to "claims." Moreover, the first reference to claims specifically refers to both O.R.C. §§ 2329.66 and 2329.661 while the subsequent reference appears to generally apply to all of the statutes amended by H.B. 479.

Likewise, it is difficult, if not impossible, to imagine how the last sentence of Section 3—that the "act is not intended to impair *secured or unsecured* creditors' claims that accrue prior to the effective date of this act"—can be construed consistently with O.R.C. § 2329.66. What is necessary to establish an unsecured claim and when does it accrue? Consider the hypothetical situation of John Creditor, who is a party to a contract that Joe Debtor breached on March 26, 2013—*i.e.*, the day before the effective date of the amendments in H.B. 479. John Creditor subsequently files a lawsuit and obtain a judgment. Using the common definition of accrue,[14] John Creditor's unsecured claim would accrue prior to the effective date when the contract was breached. If John Creditor thereafter records a judgment based on this breach of contract against Joe Debtor's residence, he now has a secured claim that accrued after the effective date of the amendments. How can John Creditor's claim be both an unsecured claim that accrued prior to the effective date of the act and a secured claim that accrued after the effective date? How much is Joe Debtor allowed to claim as the Homestead Exemption with respect to John Creditor's breach of contract claim?

To complicate matters further, if Mary Creditor trips and falls at Joe Debtor's residence on March 28, 2013—*i.e.*, the day after the effective date of the amendments—and obtains a judgment that becomes a lien against Joe Debtor's residence, there is no question that the increased Homestead Exemption amount would apply. Suppose Mary Creditor records her tort judgment as a lien before John Creditor records the judgment based on breach of contract. Under Landmark's interpretation, this sequence would lead to the anomaly of the earlier filed tort lien being avoided by application of the increased Homestead Exemption amount while the later filed contract lien would not be avoided because the lesser Homestead Exemption amount would apply. This inequitable result vio-

---

14. Accrue is defined as "[t]o come into existence as an enforceable claim or right; to arise[.]" *Black's Law Dictionary* at 23 (8th Ed. 2004). Courts must presume that the Ohio General Assembly uses words in accordance with their common usages and mean-

ings. *See Kish v. City of Akron,* 109 Ohio St.3d 162, 846 N.E.2d 811, 817 (2006) (noting that courts should give effect to the "usual, normal and customary meaning" of a statute's words).

lates the "first in time, first in right" rule that prior filed liens take precedence over later filed liens. *See* O.R.C. §§ 2329.02, 5301.23 (West 2013); *see also Basil v. Vincello,* 50 Ohio St.3d 185, 553 N.E.2d 602, 607 (1990). As the hypothetical demonstrates, Section 3 is internally nonsensical and unworkable. The Court thus declines to adopt Landmark's interpretation of O.R.C. § 2329.66, which requires application of the Homestead Exemption in effect on the date the lien is recorded—*i.e.,* when the secured claim accrues.

### 4. The Federal Definition of Impairment

The Ohio legislature cannot usurp the Bankruptcy Code's definition of impairment despite any equivocal language in Section 3 of H.B. 479. The Sixth Circuit Court of Appeals recognized a uniform, federal definition of impairment for purposes of lien avoidance under § 522(f) in *Holland v. Star Bank, N.A. (In re Holland),* 151 F.3d 547 (6th Cir.1998). In *Holland,* the Court of Appeals expressly overruled its prior decision in *In re Dixon,* 885 F.2d 327 (6th Cir.1989), which held that (i) the Homestead Exemption in O.R.C. § 2329.66 was effective only upon execution, garnishment, attachment or judicial sale; (ii) absent one of those occurrences, a debtor's exemption was not impaired; and (iii) accordingly, a debtor could not avoid a creditor's judicial lien in bankruptcy.

The Court of Appeals relied on the 1994 amendments to the Bankruptcy Code to reject *Dixon* and reasoned:

> [T]he *Dixon* court held that a homestead exemption was not effective until the circumstances described under Ohio Rev.Code Ann. § 2329.66(A)(1)(b) had occurred. In [*In re*] *Moreland,* [21 F.3d 102 (6th Cir.1994)], which was decided before the 1994 Amendments to the Bankruptcy Code, we applied *Dixon*

and held that the debtor could not assert her homestead exemption and avoid a judgment lien until the events under Ohio Rev.Code Ann. § 2329.66(A)(1)(b) had occurred, i.e., a judicial sale or other form of involuntary execution. We recognized, however, that Moreland was entitled to *claim* her $5,000 homestead exemption. We concluded Moreland was unable to exercise that entitlement, however, until the occurrence of a judicial sale or involuntary execution. *Congress' enactment of the 1994 Bankruptcy Code amendments, however, has created a federal definition of impairment,* 11 U.S.C. § 522(f)(2)(A), and, in light of this explicit language, we no longer look to state law to define impairment.

*Holland,* 151 F.3d at 550 (second emphasis added) (internal quotations and citations omitted). As a consequence, the Sixth Circuit applied the formula in 11 U.S.C. § 522(f) and affirmed the avoidance of the judicial lien.

The Court of Appeals in *Holland* made clear that this Court "no longer look[s] to state law to define impairment." *Id.* It follows, then, that the Bankruptcy Code necessarily preempts any effort by a state legislature to override or infringe upon the federal definition of impairment in § 522(f).

For example, in *In re Betz,* 273 B.R. 313 (Bankr.D.Mass.2002), the Massachusetts homestead exemption was amended from $100,000.00 to $300,000.00; however, the increased exemption amount was subordinated to any lien, right or interest recorded or filed before the effective date of the amendment. The bankruptcy court in *Betz* held that the provision precluding application of the $200,000.00 increase to liens that preexisted the amended statute's effective date was preempted as it applied to chapter 7 debtors that filed their bank-

ruptcy petitions after the amended statute became effective. The court held:

> Whether the state excludes a category of debt from exemption protection altogether or whether it carves out an exception for the applicable dollar amount for the same category of debt is an irrelevant distinction given the overarching principle that conflicting state exemption limitations have no effect under the Bankruptcy Code. Either method of carving out exceptions ultimately reduces the debtor's homestead estate because under either method, this Court must first apply the statute's exceptions before determining what property is exempt. Under the Bankruptcy Code, both methods must fail because § 522(b)(2) does not incorporate all of a state's built-in limitations on exemptions. Rather, the state exemption scheme is merely the platform upon which federal policies operate.
>
> * * *
>
> Accordingly, Section 3's subordinating clause conflicts with § 522(c) and has no effect in this bankruptcy proceeding. The applicable exemption amount in this case, therefore, is the amount in effect at the time the Debtors filed for relief, namely $300,000.

*Id.* at 324–25.

This Court agrees with the persuasive reasoning in *Betz* and finds that the Bankruptcy Code's definitions in § 522 preempt any attempt by the Ohio General Assembly in Section 3 of H.B. 479 not to impair prior liens. The Bankruptcy Code establishes a uniform definition of impairment in § 522(f)(2)(A) without reference to conflicting state law provisions. *See Holland,* 151 F.3d at 550. Section 522 confirms that property exemptions are determined "on the date of the filing of the petition." 11 U.S.C. § 522(b)(3)(A) (West 2013). Although Landmark urges the Court to forego this directive so as not "to impair any

secured or unsecured creditors' claims that accrue prior to the effective date" of H.B. 479, any contradictory statement of intent does not and cannot supersede the federal definition of impairment contained in § 522(f).

Moreover, in uniformly defining impairment, Congress decreed that the amount of the exemption for purposes of avoiding a judicial lien is "the amount of the exemption that the debtor could claim *if there were no liens on the property[.]* " 11 U.S.C. § 522(f)(2)(A)(iii) (West 2013) (emphasis added). Because the exemption amount is determined without regard to liens on the property, Landmark's argument fixing the Debtor's exemption when the Landmark Lien accrued is unavailing. As such, the Debtor may claim the Homestead Exemption in the amount in effect as of the Petition Date.

### 5. *Retroactivity*

Finally, Landmark argues that O.R.C. § 2329.66 cannot be applied retroactively because (i) there is no clear legislative intent to do so; and (ii) application of a statute that involves a substantive right, as opposed to one that is merely remedial, violates Article 2, § 28 of the Ohio Constitution. (Obj. at 3.) Landmark's argument fails for at least two reasons.

First, the Ohio General Assembly is charged with knowledge of the courts' construction and application of the Homestead Exemption. In interpreting a statute, courts may presume that a lawmaking body acted against the backdrop of existing jurisprudence unless it specifically negates such jurisprudence. *See In re Bunting Bearings,* 302 B.R. 210, 217 (Bankr. N.D.Ohio 2003) (citing *Goodyear Atomic Corp. v. Miller,* 486 U.S. 174, 175, 108 S.Ct. 1704, 100 L.Ed.2d 158 (1988)); *see also Ohio v. Ferguson,* 120 Ohio St.3d 7, 896 N.E.2d 110, 115 (2008). As set forth

*infra* at 14–16, the 2008 amendments were uniformly applied to judicial liens predating the effective date of the amendments in bankruptcy cases filed after that date. Had the Ohio legislature wished to apply the increased Homestead Exemption amount only to judicial liens filed after the effective date of H.B. 479, it could have expressly amended O.R.C. § 2329.66 to effectuate this result. The Ohio General Assembly declined to do so. Rather, with the exception of the updated exemption amount, the legislature, through H.B. 479, enacted an identical version of the previous Homestead Exemption as it applies to lien avoidance on residential real property. The Ohio General Assembly thus can be presumed to have intended for the increased Homestead Exemption amount to apply to bankruptcy cases filed on or after the effective date of March 27, 2013 regardless of any prior recorded judicial liens.

Additionally, the increase in the Homestead Exemption amount does not deprive Landmark of any substantive rights. A case in point is *Bartlett v. Giguere (In re Bartlett)*, 168 B.R. 488 (Bankr.D.N.H. 1994), in which the district court upheld the retroactive application of New Hampshire's increased homestead exemption amount from $5,000.00 to $30,000.00 to creditors with preexisting liens. The court in *Bartlett* explained that, although a creditor with an attachment or other judicial lien may have had an existing right to move against a debtor's collateral subject only to a $5,000.00 exemption at the time the non-consensual lien was obtained, that right carried an obligation to assert and enforce such right promptly under the existing statutory framework. Because it was known that the homestead exemption laws are periodically updated and changed, the court concluded that creditors were not deprived of any substantive rights when New Hampshire increased its homestead exemption; instead, the creditors lost their rights through their own inaction.

As in *Bartlett*, enactment of Ohio's increased exemption amount does not take away any of Landmark's substantive rights. Landmark knew or should have known that the Ohio General Assembly periodically amends the exemption statute and, thus, the amount of the Homestead Exemption was subject to change. Any change to the Homestead Exemption amount could adversely affect Landmark's ability to foreclose on its judgment lien. Accordingly, Landmark had an obligation to timely and diligently enforce its rights under Ohio law.

Landmark filed the Landmark Lien on March 16, 2011—a full two years before the Debtor filed his bankruptcy petition. Within that time, Landmark could have foreclosed upon the Landmark Lien and initiated proceedings to enforce its rights against the Debtor. Landmark's failure to do so cannot and should not deprive the Debtor of the Homestead Exemption amount to which he is otherwise entitled. Thus, the Debtor may claim the Homestead Exemption in the amount of $132,900.00 even though the Landmark Lien was recorded prior to the effective date of the increased exemption amount.

## IV. CONCLUSION

This Court finds that the Debtor is entitled to claim the Homestead Exemption in the amount of $132,900.00, which is the amount in O.R.C. § 2329.66(A)(1) in effect as of the Petition Date. As a consequence, the Landmark Lien impairs the Debtor's Homestead Exemption, and both the Landmark Lien and the Unifund Lien are avoidable pursuant to 11 U.S.C. § 522(f).

An appropriate order will follow.

## ORDER AVOIDING JUDICIAL LIENS

This cause is before the Court on Amended Motion of Debtor to Avoid Judgment Liens of Unifund CCR Partners and Landmark National II, Corp. Pursuant to Section 522(f)(1)(A) of the Bankruptcy Code ("Motion to Avoid Liens") (Doc. # 13) filed by Debtor Ronald B. Depascale on May 3, 2013. Pursuant to 11 U.S.C. § 522(f)(1)(A), the Debtor requests the Court to avoid two judicial liens on the basis that the liens impair the Debtor's homestead exemption as set forth in Ohio Revised Code ("O.R.C.") § 2329.66(A)(1)(b) ("Homestead Exemption"). The liens for which the Debtor seeks avoidance are: (i) judgment lien filed January 25, 2010 by Unifund CCR Partners ("Unifund") in the amount of $2,185.49 plus interest and costs (the "Unifund Lien"); and (ii) judgment lien filed March 16, 2011 by Landmark National II, Corp. ("Landmark") in the amount of $136,348.16 plus interest and costs (the "Landmark Lien"). Landmark filed Amended Objection to Debtor's Motion to Avoid Lien of Landmark National II, Corp. (Doc. # 16) on May 10, 2013. On June 6, 2013, the Debtor filed Response to Landmark National II, Corp.'s Amended Objection to Avoid Judgment Lien (Doc. # 24). On June 12, 2013, Landmark filed Supplement to Amended Objection to Debtor's Motion to Avoid Lien of Landmark National II, Corp. to File Real Property Appraisal (Doc. # 26).

Unifund has not opposed the Motion to Avoid Liens.

For the reasons set forth in this Court's Memorandum Opinion Regarding Motion to Avoid Judicial Liens entered on this date, the Court hereby:

1. Finds that, for purposes of avoiding the Landmark Lien and the Unifund Lien, the applicable Homestead Exemption amount is $132,900.00, which is the amount in O.R.C. § 2329.66(A)(1) applicable as of the date the Debtor filed his chapter 7 bankruptcy petition;

2. Finds that the Landmark Lien and the Unifund Lien are each avoidable pursuant to 11 U.S.C. § 522(f);

3. Grants the Motion to Avoid Liens;

4. Orders that the Landmark Lien and the Unifund Lien shall be avoided upon the Debtor receiving a discharge in this bankruptcy case; and

5. In the event Landmark and/or Unifund fail to release the Landmark Lien and/or the Unifund Lien after the Debtor receives the discharge, the Debtor may obtain the release of such lien(s) by presenting a copy of this Order and the Discharge Order to the appropriate county recorder's office.