**In re Traci L. KYLE, Debtor.**

No. 13–31398.

United States Bankruptcy Court,
S.D. Ohio,
Western Division,
at Dayton.

Signed May 14, 2014.

Brian E. Lusardi, Xenia, OH, Wayne P. Novick, Centerville, OH, Harry B. Zornow, Hamilton, OH, for Debtor.

John Paul Rieser, Dayton, OH, Trustee.

**DECISION AND ORDER OVERRULING TRUSTEE'S OBJECTIONS TO DEBTOR'S CLAIMED EXEMPTION IN REAL ESTATE (docs. 18, 21)**

LAWRENCE S. WALTER, Bankruptcy Judge.

On March 27, 2013, approximately a week before Debtor Traci Kyle ("Debtor") filed her Chapter 7 bankruptcy case, Ohio House Bill 479 went into effect thereby amending Ohio Rev.Code § 2329.66(A)(1) to increase the Ohio homestead exemption from $21,625.00 to $125,000.00. Following the Debtor's bankruptcy filing, Chapter 7 Trustee John Rieser ("Trustee"), objected to Debtor's claimed homestead exemption in the amount of $125,000.00 (now

$132,900.00 due to a statutory inflation adjustment) arguing that the Debtor is only entitled to the $21,625.00 (plus inflation adjustment) exemption afforded prior to the amendment. Because uncodified language governing the effective date of the recent amendment is ambiguous and because another section of the Ohio exemption statute and federal bankruptcy policies favor application of the amended exemption, the court overrules the Trustee's objection, as more fully discussed below.

This matter is before the court on the Trustee's Objection to Debtor's Claimed Exemption in Real Estate (doc. 18), the Debtor's Response (doc. 21), the Trustee's Second Objection to Debtor's Claimed Exemption in Real Estate (doc. 24), and the Debtor's Response (doc. 26). By order dated June 26, 2013 (doc. 28), the court set a deadline for the parties to request a hearing or additional briefing. A hearing was not requested, but a briefing schedule was set by an Agreed Order dated July 10, 2013 (doc. 32) resulting in Stipulations of Fact (doc. 37), a brief by the Trustee (doc.

38), a responsive brief by the Debtor (doc. 43), and a reply brief by the Trustee (doc. 44).

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334, and the standing General Order of Reference in this District. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

### FACTUAL BACKGROUND

Unless otherwise stated, these facts are derived from the parties' Stipulations of Fact (doc. 37). The Debtor filed her Chapter 7 bankruptcy on April 5, 2013. She owns residential real estate located at 3789 Kyle Road, Cedarville, Ohio ("Real Estate"). The Real Estate has been appraised at a value of $139,000.00 (doc. 8). She acquired the Real Estate by inheritance evidenced by a Certificate of Transfer recorded on January 28, 2010. There are no liens on the Real Estate.

At the time of filing, the Debtor had no secured debt and only five unsecured debts. The following is a list of the Debtor's debts:

| Name of Creditor | Amount due Per Sched F | Date Acct Opened | Acct Status [1] |
|---|---|---|---|
| Asset Acceptance LLC | $32,000.00 [2] | June 2008 | Open; In Collection |
| Midland Funding [3] | $5,828.00 | August 2010/May 1, 1995 [4] | Open; In Collection |
| Citibank–Shell | $2,448.00 | June 2002 | Closed |
| Target, N.B. | $2,247.00 | November 2003 | Closed |
| GECRB/JCP | $0.00/$1,360.00 [5] | October 1988 | Closed |

According to the parties' stipulated facts, only one account, that of Target

1. According to the Stipulations of Fact, account status is determined based on a Credit Report dated March 19, 2013.

2. There is a small variance between the amount scheduled on Schedule F, $32,000.00, and that reported on the March 19, 2013 creditor report of $31,809.00.

3. Midland Funding is listed as the collection agent for Citibank.

4. The March 19, 2013 Credit Report lists the Midland Funding account as being opened in August of 2010, but the creditor's proof of claim (POC # 2) states that the account was opened on May 1, 1995.

5. The differing amounts reflect a discrepancy between Schedule F (showing $0.00 owed to this creditor) and the March 19, 2013 Credit Report reflecting a $1,360.00 balance owed.

N.B., was not in arrears on or prior to April 5, 2013, the date that the Debtor filed her bankruptcy petition.[6] The other four were in arrears prior to March 27, 2013, the effective date of the amendment to the Ohio homestead exemption, and remained in arrears on the date of the bankruptcy filing. Furthermore, Asset Acceptance LLC filed suit against the Debtor in the Greene County Common Pleas Court on October 22, 2012. The parties stipulated that all five accounts were opened prior to the real estate transfer to the Debtor on January 28, 2010.

## QUESTIONS PRESENTED

There are no issues of fact presented to the court and the primary legal questions are the following:

A. Is the Debtor entitled to benefit from the Amended Ohio Homestead Exemption, codified at Ohio Rev.Code § 2329.66(A)(1), because the amendment's effective date was prior to the bankruptcy filing or does uncodified language enacted with the amendment apply in bankruptcy to prevent the application of the Amended Ohio Homestead Exemption to creditor claims that "accrued" before the effective date?

B. Does application of the Amended Ohio Homestead Exemption to bankruptcy cases filed after its effective date comply with Ohio constitutional and statutory requirements prohibiting the enactment of retroactive laws?

C. Assuming that the uncodified "claims accrued" language was intended to apply, do provisions of the Bankruptcy Code preempt its use in bankruptcy?

## LEGAL ANALYSIS

■ In bankruptcy, a debtor is able to claim certain property considered neces-

sary for the survival of a debtor and the debtor's dependents as "exempt" thereby moving that property beyond the reach of most creditors. *Menninger v. Schramm (In re Schramm)*, 431 B.R. 397, 400 (6th Cir. BAP 2010); *In re Pursley*, 2014 WL 293557, at *2 (Bankr.N.D.Ohio Jan. 23, 2014). Although the Bankruptcy Code creates a list of exempt property in 11 U.S.C. § 522(d), it also allows a state to "opt-out" of the federal list in favor of its own exemption framework. 11 U.S.C. § 522(b); *Schramm*, 431 B.R. at 400. Ohio is an "opt-out" state and, consequently, a debtor properly domiciled in Ohio may only take exemptions authorized under Ohio or nonbankruptcy law. Ohio Rev.Code § 2329.662. *See also Schramm*, 431 B.R. at 400. "In order to effectuate the goals of providing honest debtors a fresh start and affording debtors life's basic necessities, Ohio courts follow the rule that exemption statutes are to be construed liberally in favor of the debtors, and that any doubt in interpretation should be in favor of granting the exemption." *In re Wengerd*, 453 B.R. 243, 247 (6th Cir. BAP 2011) (relying on *Daugherty v. Central Trust. Co. of N.E. Ohio, N.A.*, 28 Ohio St.3d 441, 504 N.E.2d 1100, 1104 (1986)).

■ Many of the exemptions that a debtor properly domiciled in Ohio could take are found in the "Ohio Exemption Statute," Ohio Rev.Code § 2329.66. One is a homestead exemption allowing a person to exempt his or her "interest," up to a specific monetary amount, in a parcel of property that the person or a dependent of that person uses as a residence. Ohio Rev.Code § 2329.66(A)(1). On March 27, 2013, approximately a week before the Debtor filed her bankruptcy petition, the Ohio Exemption Statute was amended by

---

**6.** Although the parties stipulated that the Target account was not in arrears at the bankruptcy filing date, the account is also listed as being closed as of March 19, 2013 with $2,247.00 due.

Ohio House Bill 479 ("H.B. 479") to significantly increase the Ohio homestead exemption from $21,625.00 to $125,000.00 (the "Amended Homestead Exemption").[7] *Id.*

The controversy between the Debtor and Trustee focuses on how this amendment to the Ohio Exemption Statute applies in bankruptcy and whether the Debtor is entitled to claim the significantly higher Amended Homestead Exemption. The Debtor argues that she is entitled to the higher exemption amount because the statutory change went into effect prior to her bankruptcy filing date. The Trustee objects asserting that the bankruptcy petition filing date is not the relevant date for determining whether the Amended Homestead Exemption applies. The Trustee highlights uncodified language enacted by the Ohio General Assembly with the Amended Homestead Exemption that limits the statutory amendment's application to "claims accruing" on or after the March 27, 2013 effective date. Although the uncodified language does not mention bankruptcy, the Trustee asserts that the "claims accruing" language is broad and encompasses creditor claims in bankruptcy. Consequently, the Trustee's position is that the Debtor cannot claim the Amended Homestead Exemption with respect to her four creditor claims that "accrued" prior to the March 27, 2013 effective date. After careful review of how the codified and uncodified language adopted by the Ohio General Assembly fits within the existing framework for use of state law exemptions in bankruptcy, the court rejects the Trustee's position. The court concludes that the Debtor is entitled to take the higher Amended Homestead Exemption that went into effect prior to her bankruptcy filing date.

## A. Plain Language in Federal and State Statutes Supports that the Bankruptcy Filing Date Determines State Law Exemptions

 The court begins its analysis by noting that the Amended Homestead Exemption was not enacted in a vacuum. Instead, the statutory amendment was adopted in an already existing framework for the use of state law exemptions in bankruptcy created through the mutual workings of the Bankruptcy Code and state law. Within this framework, provisions in the Bankruptcy Code and the Ohio Exemption Statute address how to determine the state law exemptions that a debtor is entitled to claim. Section 522 of the Bankruptcy Code provides that it is the state exemption law applicable on the date of the bankruptcy filing that determines what property a debtor may exempt. 11 U.S.C. § 522(b)(3)(A). *See also In re Jaber,* 406 B.R. 756, 762 (Bankr. N.D.Ohio 2009). Furthermore, the Ohio legislature has enacted a provision in the Ohio Exemption Statute stating that the "interest" in which a bankrupt debtor may claim an exemption is to be determined as of the bankruptcy petition filing date. Ohio Rev.Code § 2329.66(D). In other words, both the Bankruptcy Code and Ohio Exemption Statute point to the bankruptcy petition filing date as the crucial date for determining a debtor's entitlement to specific exemptions, including the homestead exemption, and the appropriate amount. *Wengerd,* 453 B.R. at 250 ("... the Sixth Circuit Court of Appeals long ago recognized that a debtor's right to a homestead exemption under Ohio law is determined as of the date of the bankruptcy."); *Jaber,* 406 B.R. at 762 (concluding that a debtor was entitled to claim the higher amount in a 2008 amendment to

---

**7.** Both parties acknowledge that these numbers are adjusted for inflation pursuant to

O.R.C. § 2329.66(B) such that Debtor's claimed homestead exemption is $132,900.00.

the Ohio homestead exemption because the effective date of the 2008 amendment was prior to the debtor's bankruptcy filing date). Even the United States Supreme Court has "long favored the petition date as the proper time to measure exemptions." *Pursley,* 2014 WL 293557, at *3 (citing *White v. Stump,* 266 U.S. 310, 313, 45 S.Ct. 103, 69 L.Ed. 301 (1924)).

However, along with the most recent amendment to the homestead exemption in H.B. 479, the Ohio General Assembly adopted certain uncodified language in Section 3 (the "uncodified language") which, read in its entirety with the significant sentences underlined and italicized, provides:

> The amendments made by this act to section 1336.04 of the Revised Code shall apply to transfers made on or after the effective date of this act. *The amendments made by this act to sections 2329.66 and 2329.661 of the Revised Code shall apply to claims accruing on or after the effective date of this act.* The amendments made by this act to section 5815.36 of the Revised Code shall apply to disclaimers made on or after the effective date of this act. Section 5815.37 of the Revised Code as enacted by this act shall apply to conveyances made on or after the effective date of this act. The application of the amendments made by this act to section 2131.08 of the Revised Code is provided [for] in division (F) of section 2131.08 of the Revised Code as amended by this act. The application of the amendments made by this act to section 2131.09 of the Revised Code is provided for in divisions (C) and (E) of section 2131.09 of the Revised Code as amended by this act. The application of the sections of Chapter 5816. of the Revised Code as enacted by this act is provided for in section 5816.14 of the Revised Code as enacted by this act. Sections 1319.07 to 1319.09 of the Revised Code, as enacted by this act, apply to the enforcement and interpretation of all nonrecourse loan documents in existence on, or entered into on or after, the effective date of this act. *This act is not intended to impair any secured or unsecured creditors' claims that accrue prior to the effective date of this act.*

Ohio Sub. H.B. 479 at Section 3 (129th Ohio Gen. Assembly). The uncodified language, according to the Trustee, changes the crucial date to determine a debtor's entitlement to the Amended Homestead Exemption from the bankruptcy filing date to the date when each creditor's "claim accrues."

The court's view of the language is not nearly as clear as the Trustee would suggest. The uncodified language is silent as to its application in bankruptcy cases nor does it state that it was intended to modify the preexisting framework pinpointing the bankruptcy filing date as the date to determine a debtor's exemption rights. The omission is significant because the primary use of the Ohio Exemption Statute outside of bankruptcy is in judicial processes involving a singular or discrete number of often secured creditors such as executions, garnishments, attachments, or sales to satisfy a judgment order. Bankruptcy, on the other hand, brings with it a need to determine the relative rights of the totality of a debtor's secured and unsecured creditors. *See J & M Securities, LLC v. Moore (In re Moore),* 495 B.R. 1, 5 (8th Cir. BAP 2013) (noting that "[i]n a bankruptcy case, exemption is an issue between the debtor and the creditor body as a whole, represented by the trustee, not between the debtor and a single creditor"). Determining the "accrual dates" for every creditor claim, secured and unsecured, and how that impacts a debtor's exemptions in bankruptcy is unexplained by the uncodified language. In other words, the omission of how the uncodified language im-

pacts bankruptcy suggests that it was not considered by the General Assembly nor was it intended to apply in bankruptcy when the language was enacted. Because the Ohio Supreme Court has not addressed the interpretation of the uncodified language and its potential application in bankruptcy, this remains an undecided question of state law requiring this court to predict how the state's highest court would interpret the ambiguities in the uncodified language. *Katz v. Fidelity Nat'l Title Ins. Co.*, 685 F.3d 588, 596 (6th Cir. 2012); *In re Depascale*, 496 B.R. 860, 869 (Bankr.N.D.Ohio 2013).

▪▪▪▪ " 'In the construction of [Ohio] statutes the purpose in every instance is to ascertain and give effect to the legislative intent. . . .' " *Katz*, 685 F.3d at 596 (further citation omitted). In order to determine legislative intent, the court must begin by looking to the language of the statute itself. *Id.; Depascale*, 496 B.R. at 869. If the statutory language is clear, the inquiry ends and the court must apply the plain language. *Katz*, 685 F.3d at 596; *Depascale*, 496 B.R. at 869–70. If the language is ambiguous, the court may determine the intent of the legislature from other sources including the object sought to be obtained by the legislation, legislative history, former statutory provisions and common law, and the consequences of a particular interpretation. *Katz*, 685 F.3d at 596. As noted before, the uncodified language is ambiguous with respect to its application in bankruptcy leaving the court to determine legislative intent from other sources.

Recently, a bankruptcy judge from the Northern District of Ohio relied on these statutory construction principals to address the proper interpretation of the uncodified language and whether it applies to exemptions in bankruptcy. *In re Depascale*, 496 B.R. 860 (Bankr.N.D.Ohio 2013) (J. Woods). In *Depascale*, the bankruptcy court rejected the Trustee's position that the uncodified language applies in bankruptcy and ultimately determined that the bankruptcy filing date remains the crucial date for determining a debtor's homestead exemption rights. *Id.* at 874.

The court began by noting that the *codified* language of the Ohio Exemption Statute, even following the H.B. 479 amendments, remains plain and clear. *Id.* at 870. While H.B. 479 changed the amount of the "interest" in a residential property that a debtor can claim as exempt, raising it to $125,000.00, the date that the "interest" is to be determined remained the bankruptcy petition filing date per Ohio Rev.Code § 2329.66(D). *Id.* "Thus, the express language of [Ohio Rev.Code] § 2329.66 makes clear that a debtor's interest in the exempted property is determined as of the petition date. . . ." *Id.*

On the other hand, the meaning of the uncodified language is unclear. *Id.* at 871. No mention is made in the uncodified provision of its application to bankruptcy or any intent to change the long established policy in Ohio Rev.Code § 2329.66(D), 11 U.S.C. § 522 and supporting case law pinpointing the bankruptcy filing date as the date to determine exemption rights.

Furthermore, if applicable in bankruptcy, the lack of definitions for relevant terms, particularly the term "accrues," adds to the ambiguity making it difficult if not unworkable in the context of a bankruptcy case. *Id.* at 870–71 (pondering how to determine when an unsecured creditor claim accrues for purposes of determining the applicable exemption). The Trustee asserts that an unsecured creditor's claim "accrues" when a contract is breached, pointing to Ohio Rev.Code § 1302.98(B). However, not all creditor claims, like those sounding in tort, involve a breach of contract. The definition provided by *Black's Dictionary* is somewhat broader defining "accrue" as "[t]o come into existence as an

enforceable claim or right; to arise[.]" *Black's Law Dictionary* at 23 (8th Ed. 2004); *Depascale*, 496 B.R. at 871 n. 14. Under this definition, the accrual date of a creditor's claim remains hazy: when does a claim accrue if it is really a composite debt for ongoing treatments of a chronic medical condition—the date of each treatment, the date each bill is sent out, or the date of a delinquency in payment (and what if a debtor is delinquent on more than one payment while continuing to receive more treatments)? What about grace periods, waivers and when a claim is accelerated—do these effect when a claim accrues?

After establishing the correct definition of accrue, the debtor would face the challenge of investigating each and every creditor claim to determine the accrual date just so the debtor could schedule his or her claimed exemptions. While the Trustee asserts that the accrual date involves only a simple factual determination not requiring unduly burdensome discovery, the court is not so optimistic that accrual dates are easily determined and the issue could result in piecemeal litigation on each claim. Looking at a revolving credit card claim, what if a debtor makes the minimal monthly payments then becomes delinquent while continuing to add new debt each month—does a portion of the creditor's claim "accrue" at an earlier date than the newer debt? Could this result in a bifurcated exemption with respect to that creditor? How about a creditor whose status changes from unsecured prior to the effective date of the Amended Homestead

Exemption to secured by way of judicial lien recorded after the effective date? What is the accrual date and applicable exemption amount with respect to that claim? The *Depascale* court probes this and other hypothetical scenarios highlighting the lack of a framework for how the "claims accrued" language would apply in the context of a bankruptcy case.[8] 496 B.R. at 871–72.

After careful review, the court agrees with *Depascale* and three subsequent determinations by two other bankruptcy judges and an Ohio appellate court, that there is no clear legislative intent for the uncodified "claims accruing" language to apply in the context of a bankruptcy case. *See In re Mitchell*, 2014 WL 1725819, at *7 (Bankr.N.D.Ohio April 30, 2014) (finding persuasive the reasoning of *Pursley* and *Depascale* ); *Pursley*, 2014 WL 293557, at *4 (agreeing with the reasoning in *Depascale* ); *First Nat'l Bank of Pennsylvania v. Jones*, —— Ohio App.3d ——, 6 N.E.3d 1231, 1234 (2014) (adopting *Depascale* 's reasoning in the context of a writ of execution and noting that "[i]n the absence of a clearer statement of intent, we find no reason to determine that this [uncodified] language should counteract the existing language in the statute [Ohio Rev.Code § 2329.66(D) ]" regarding when a debtor's "interest" is to be determined). The uncodified language lacks any reference to bankruptcy nor does it provide a framework for how exemptions would be determined in bankruptcy if it applied. Accordingly, this uncodified language, while a

---

**8.** Even after a definition for accrual is set and a determination is made of when each and every creditor claim in a bankruptcy case accrued, there would be more questions to answer. Assuming that the debtor is left with a pool of unsecured claims accruing before the effective date of the Amended Homestead Exemption and some accruing after, what is the appropriate basis for a separate distribution to these two pools that would otherwise be in the same class of general unsecured creditors? See 11 U.S.C. § 726; *Specker Motor Sales v. Eisen*, 393 F.3d 659, 662 (6th Cir.2004) (noting that "11 U.S.C. § 726(b) plainly mandates *pro rata* distribution of assets among creditors in the same statutory class"). This issue will be discussed more thoroughly in the preemption analysis.

part of Ohio law, cannot supplant the clear language of the statute itself, Ohio Rev. Code § 2329.66(D), pinpointing the bankruptcy filing date as the date exemption rights are determined. *Depascale,* 496 B.R. at 870. *See also First Nat'l Bank,* 6 N.E.3d at 1234–35.

### B. Applying the Amended Homestead Exemption to Bankruptcy Cases Filed After the Effective Date Complies with Ohio Constitutional and Statutory Requirements

■ Next, the Trustee argues that the application of the Amended Homestead Exemption to all bankruptcy cases filed after the effective date regardless of when the claims accrued will violate Ohio constitutional and statutory provisions prohibiting retroactive laws. The Debtor disagrees asserting that applying the Amended Homestead Exemption to bankruptcies filed after the effective date is prospective and, moreover, is how amendments to the Ohio Exemption Statute have always been applied in bankruptcy cases. Even if the application of the Amended Homestead Exemption had a retroactive impact, the Debtor argues, that impact is not prohibited because the Amended Homestead Exemption did nothing more than raise the amount of an already existing exemption, a change that is considered remedial in nature. The court agrees with the Debtor that applying the Amended Homestead Exemption in bankruptcy cases filed after the amended exemption's effective date complies with Ohio Constitutional and statutory requirements.

■ It is well settled Ohio law that "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." Ohio Rev.Code § 1.48; *State v. Consilio,* 114 Ohio St.3d 295, 871 N.E.2d 1167, 1171–72 (2007) (noting that a statute

must clearly proclaim its own retroactivity to overcome of the presumption of prospective application). In addition, the Ohio General Assembly does not possess an absolute right to adopt retroactive statutes. *Consilio,* 871 N.E.2d at 1171. Section 28, Article II of the Ohio Constitution prohibits the retroactive impairment of vested substantive rights. *Id.* However, "the General Assembly may make retroactive any legislation that is merely remedial in nature." *Id.*

Looking at the act codifying the Amended Homestead Exemption, the court agrees with the Trustee that it contains no express intent on the part of the General Assembly to apply the amended exemption retroactively and, consequently, the amended exemption is presumed to operate prospectively. If anything, the Trustee argues, the uncodified language expresses an intent for it to be applied prospectively to "claims accruing" after the effective date. However, as noted in the prior section, what is missing from the uncodified language is any expression of whether or how the "claims accruing" language applies in bankruptcy. Also omitted is any suggestion that the language was intended to modify the preexisting framework pinpointing the bankruptcy filing date as the date to determine exemption rights. This court concluded in the prior section that the General Assembly did not intend the uncodified language to apply in bankruptcy leaving intact the pre-existing framework determining a debtor's right to the Amended Homestead Exemption based on the bankruptcy filing date and not when creditor claims accrued. Thus, the question to be addressed is whether this pre-existing framework for determining a debtor's exemption rights is, itself, unconstitutionally retroactive. The court concludes it is not.

As noted by Judge Kendig in *Pursley,* applying the Amended Homestead Exemption to bankruptcy cases filed after its effective date is, in fact, a prospective application of the amendment. 2014 WL 293557, at \*10. Indeed, the Ohio Exemption Statute has been amended periodically over the years and bankruptcy courts have had no constitutional problems applying the exemption amounts in effect on the bankruptcy filing date. *Pursley,* 2014 WL 293557, at \*12; *Depascale,* 496 B.R. at 867–68; *Simon v. Citimortgage, Inc. (In re Doubov),* 423 B.R. 505, 514 (Bankr. N.D.Ohio 2010); *Jaber,* 406 B.R. at 762; *In re Guikema,* 329 B.R. 607, 619 n. 8 (Bankr.S.D.Ohio 2005).

■ Nonetheless, a statutory amendment may still implicate the retroactivity clause of the Ohio Constitution if it operates prospectively, but, in doing so, divests substantive rights, particularly property rights, which vested prior to the enactment. 2014 WL 293557 at \*10 (citing *Longbottom v. Mercy Hosp. Clermont,* 137 Ohio St.3d 103, 998 N.E.2d 419, 425 (2013) and *Board of Trs. of the Tobacco Use Prevention & Control Found. v. Boyce,* 127 Ohio St.3d 511, 941 N.E.2d 745, 750 (2010)). The Trustee argues that application of the Amended Homestead Exemption in this bankruptcy case operates retroactively by "impairing" the four creditor claims that he alleges accrued before the Amended Homestead Exemption's effective date. The creditor claims in this case, however, are unsecured; consequently, the creditors have no substantive or vested rights in the real property subject to the exemption. To the extent that the Trustee is suggesting that these creditors formed an expectation of recovery based on the lower statutory homestead exemption, the court does not agree that such an expectation amounts to a vested right. *See Board of Trs. of the Tobacco Use Prevention and Control Found. v. Boyce,* 127 Ohio St.3d 511, 941 N.E.2d 745, 752 (2010) (noting that "[t]here is a long-standing principle in American law that '[n]o person has a vested interest in any rule of law, entitling him to insist that it shall remain unchanged for his benefit.' ") Indeed several of the creditor claims are of an advanced age and likely "accrued" [9] prior to the date that the Debtor inherited the residential property in 2010.[10] Surely, these unsecured creditors could not set expectations of recovery from real property that the Debtor did not own at the time their claims accrued.[11]

■ For these reasons, the court determines that application of the Amended Homestead Exemption in this bankruptcy case is a prospective application of the exemption that does not retroactively

---

9. For purposes of this analysis, the court uses the Trustee's definition of "accrual" meaning breach of contract or delinquency.

10. The parties' Stipulations of Fact document shows only the date each creditor account was opened and does not provide any date of accrual for each creditor claim. However, given the age of the accounts dating back to 1988, 1995, 2002, 2003 and 2008, it is likely that at least some of them "accrued" prior to the date the Debtor inherited the residential property in 2010 [doc. 37]. It is telling, perhaps, that the Trustee argues that calculating accrual dates involves a "simple factual determination," yet fails to calculate those dates

with respect to the creditor claims at issue in this case.

11. Even if these unsecured creditors could be said to have a contractual expectation for a certain recovery, it is well known that upon the filing of a bankruptcy petition, an unsecured creditors' contractual rights may be impaired or modified. *Americredit Fin. Servs. v. Nichols (In re Nichols),* 440 F.3d 850, 854 (6th Cir.2006) (differentiating a contractual right to repayment of a debt from a property right obtained by way of security interest and noting that "[b]ankruptcy laws have long been construed to authorize the impairment of contractual obligations").

divest the Debtor's creditors of substantive or vested rights.[12]

## C. The Bankruptcy Code Preempts Application of the Uncodified Language in Bankruptcy

■ Although not determinative in this case, the court will also address the alternative issue: whether application of the uncodified language in bankruptcy is preempted by conflicting provisions in the Bankruptcy Code. As previously noted, the Trustee argues that the increased Amended Homestead Exemption does not apply to prepetition "claims accruing" prior to March 27, 2013 pursuant to the uncodified language in Ohio H.B. 479. Application of the uncodified language in bankruptcy thus causes a portion of the Debtor's claimed exemption in residential real property to remain liable to the prepetition debts that accrued prior to the March 27, 2013 effective date. It also creates two tiers of prepetition creditors: those with claims accruing before the March 27, 2013 date who would presumably be entitled to a larger distribution than those creditors with claims accruing after the March 27, 2013 date whose distribution would be based on the increased $125,000.00 Amended Homestead Exemption.[13] The Debtor argues that this application of the uncodified language in bankruptcy goes beyond the state's authority to create and define its own exemptions by infringing on other provisions and policies in the Bankruptcy Code. The court agrees with the Debtor and concludes that application of the uncodified "claims accruing" language in bankruptcy is preempted.

■ Congress has plenary power to enact uniform federal bankruptcy laws. U.S. Const. art. 1, § 8, cl. 4; *Patriot Portfolio, LLC v. Harry Weinstein (In re Weinstein)*, 164 F.3d 677, 682 (1st Cir. 1999). Consequently, " '[s]tates may not pass or enforce laws to interfere with or complement the Bankruptcy Act or provide additional or auxiliary regulations.' " *Weinstein*, 164 F.3d at 682–83 (quoting *International Shoe v. Pinkus*, 278 U.S. 261, 265, 49 S.Ct. 108, 73 L.Ed. 318 (1929)). Inconsistent state laws are preempted by conflicting Bankruptcy Code provisions. *Id.* Nonetheless, Congress afforded special deference to states in the area of exemptions by giving them the authority to opt out of the federal exemption scheme and create their own list of exempt property via 11 U.S.C. § 522(b). *Id.* at 683.

Given the potential for conflict between these policies, considerable disagreement exists regarding the "outer limits of a state

---

12. The *Pursley* court further concluded that any hypothetical retroactive impact on creditors caused by applying the Amended Homestead Exemption to bankruptcy cases filed after the effective date would not violate the Ohio Constitution because the Amended Homestead Exemption is remedial in nature. *Pursley*, 2014 WL 293557, at *12. "[R]emedial laws are those affecting only the remedy provided, and include laws that merely substitute a new or more appropriate remedy for the enforcement of an existing right." *Ackison v. Anchor Packing Co.*, 120 Ohio St.3d 228, 897 N.E.2d 1118, 1123 (2008). *See also Longbottom*, 998 N.E.2d at 425 (noting that remedial laws are those that merely affect the methods and procedure by which rights are recognized, protected and enforced, and not the right themselves). This court agrees with *Pursley* that the Amended Homestead Exemption is remedial in nature because it simply modifies a pre-existing exemption by increasing its value. *Pursley*, 2014 WL 293557, at *12 (noting that "changing the value of the homestead exemption neither destroys nor eliminates the rights of creditors, but instead only changes the amount"). However, the issue is not determinative because applying the Amended Homestead Exemption to bankruptcy cases is a prospective application of the law that does not violate Ohio Constitutional requirements.

13. As noted before, both the old and new exemption amounts are subject to adjustment for inflation.

law's ability to control an exemption's operative characteristics in the bankruptcy universe" especially when a state created exemption scheme conflicts with various aspects of the exemption framework in 11 U.S.C. § 522 or other provisions of the Bankruptcy Code. *In re Betz*, 273 B.R. 313, 321 (Bankr.D.Mass.2002). One such context for dispute is a state exemption law that defines an exemption to apply to certain prepetition debts but not others. *See, e.g., In re Ondras*, 846 F.2d 33, 34 (7th Cir.1988) (discussing Indiana's exemption scheme creating a list of exempt property available only for debts founded on contract and not tort); *In re Stewart*, 246 B.R. 134, 136 (Bankr.D.N.H.2000) (discussing a New Hampshire exemption for certain tax-exempt financial instruments that only applies to debts arising after January 1, 1999). Such state laws may collide with 11 U.S.C. § 522(c) which provides the limited extent to which exempt property remains liable to prepetition debts.[14] In treating prepetition unsecured debts differently, the state laws also create a two tier system of distribution running afoul of the central bankruptcy policy that creditors of the same statutory class be treated equally. 11 U.S.C. § 726(b)[15]; *Ondras*, 846 F.2d at 35–36 (noting the conflict created by a state exemption scheme that does more than just create a list of exempt property but further places that property out of reach of certain prepetition credi-

tors while keeping the property within reach of others).

When state exemption laws collide with these bankruptcy policies, judicial determinations fall into one of two camps. At one end of the spectrum are the courts that find the state prerogative to be limited to defining the nature and amount of property that can be exempted, but not the types of debts subject to the exemption. *See, e.g., Weinstein*, 164 F.3d 677 (1st Cir. 1999); *J & M Securities, LLC v. Moore (In re Moore)*, 495 B.R. 1 (8th Cir. BAP 2013); *Bruin Portfolio, LLC v. Leicht (In re Leicht)*, 222 B.R. 670 (1st Cir. BAP 1998); *Pursley*, 2014 WL 293557; *Stewart*, 246 B.R. 134; *In re Skjetne*, 213 B.R. 274 (Bankr.D.Vt.1997); *In re Whalen–Griffin*, 206 B.R. 277 (Bankr.D.Mass.1997); *In re Scott*, 199 B.R. 586 (Bankr.E.D.Va.1996). Other courts conclude that upon opting out, a state has complete latitude in defining and altering exemptions to the point of inconsistency with other Bankruptcy Code sections and with the goals and policies of the Bankruptcy Code. See, e.g., *Clark v. Chicago Mun. Employees Credit Union*, 119 F.3d 540, 544–45 (7th Cir.1997) (noting that because Illinois opted out under § 522(b), "the Illinois scheme of exemptions is allowed to be 'quite inconsistent with the general goals of the federal Bankruptcy Code'"). *See also Ondras*, 846 F.2d 33; *Cadle Co. v. Banner (In re Ban-*

---

**14.** Bankruptcy Code Section 522(c) provides that "property exempted under this section is not liable during or after the case for any debt of the debtor that arose ... before the commencement of the case, except": 1) certain taxes or customs duties; 2) certain domestic obligations; 3) liens that cannot be avoided; 4) tax liens; 5) certain nondischargeable debts owed to federal depository institutions; and 6) debts in connection with fraud in the obtaining of scholarships, grants, loans or certain other types of financial assistance for higher education. *See* 11 U.S.C. § 522(c); *Weinstein*, 164 F.3d at 679.

**15.** Bankruptcy Code Section 726(b) provides that creditors of the same statutory class are entitled to "pro rata" distribution. 11 U.S.C. § 726(b). Although unsecured creditors may belong in different statutory classes for distribution purposes based on their priority status (§ 507(a)) or the timeliness of the filing of their claim (§ 726(a)), there is no basis for dividing unsecured creditors into different classes of distribution based on differing exemption rights.

*ner)*, 394 B.R. 292 (Bankr.D.Conn.2008). The Trustee urges the court to adopt the latter approach and early decisions of the Sixth Circuit Court of Appeals support his position. *See Giles v. Credithrift of America, Inc. (In re Pine)*, 717 F.2d 281 (6th Cir.1983) (determining that an opt-out state's exemption statute precludes the use of § 522(f) such that a debtor may not avoid nonpossessory nonpurchase money security interests in the debtor's household goods); *Comm. Credit Corp. v. Brooks (In re Brooks)*, 817 F.2d 104, 1987 WL 37210, at *2–3 (6th Cir. Apr. 28, 1987) (unreported decision) (following *Pine* and holding that § 522(f) could not be used to avoid a preexisting lien excluded by the Kentucky homestead exemption).

Although these Sixth Circuit decisions support states' unfettered autonomy to create exemptions, the decisions came prior to a significant determination by the United States Supreme Court that began to define the limits of state exemptions and thereby modify Sixth Circuit law. In *Owen v. Owen*, the Court considered whether an opt-out state's exemption statute conflicts with 11 U.S.C. § 522(f) which provides a debtor with the power to avoid judicial liens that impair an exemption. 500 U.S. 305, 306–07, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991). The question presented was whether a debtor can avoid a judicial lien impairing the debtor's claimed homestead exemption even though the state of Florida had defined the exemption in such a way to specifically exclude preexisting judicial liens (i.e. liens that attached before the property acquired its homestead status). *Id.* at 306, 111 S.Ct. 1833. The debtor had purchased a condominium in Florida at which time a judgment lien previously recorded by the debtor's wife immediately attached to the property. *Id.* at 306–07, 111 S.Ct. 1833. One year later, Florida amended its homestead law so that the debtor's condominium which previously did not qualify as a homestead was now

covered by the exemption. *Id.* at 307, 111 S.Ct. 1833. However, the law did not apply to preexisting liens making them, in effect, an exception to the Florida homestead exemption. *Id.* The debtor later filed a bankruptcy petition and, following discharge, attempted to avoid the lien pursuant to § 522(f). *Id.* The bankruptcy court denied the avoidance holding that the debtor did not qualify for Florida's homestead exemption because of the preexisting lien exception. *Id.* at 307, 111 S.Ct. 1833. This decision was affirmed by the district court and Eleventh Circuit Court of Appeals. *Id.* at 307–08, 111 S.Ct. 1833.

The Supreme Court, however, rejected the lower courts' interpretation of § 522(f). Tracking the language of the Bankruptcy Code, the Court concluded that when applying § 522(f), the question is not whether the lien impairs an exemption to which the debtor is in fact entitled, but whether it impairs an exemption to which the debtor would have been entitled had the lien not existed. *Id.* at 310–11, 111 S.Ct. 1833. To be sure, this analysis rests on the language of § 522(f) which is not specifically at issue in this case. However, the Court further held that § 522(f)'s avoidance powers not only applied to federal exemptions but also to state exemptions regardless of any conflict with the opt-out state's exemption law. *Id.* at 313, 111 S.Ct. 1833. Noting that deference to states' exemption schemes was not without limits, the Court stated:

> Respondent asserts that it is inconsistent with the Bankruptcy Code's "opt-out" policy, whereby the States may define their own exemptions, to refuse to take those exemptions with all their built-in limitations. That is plainly not true, however, since there is no doubt that a state exemption which purports to be available "unless waived" will be given full effect, even if it has been

waived, for purposes of § 522(f)....
Just as it is not inconsistent with the
policy of permitting state-defined ex-
emptions to have another policy disfa-
voring waiver of exemptions, whether
federal- or state-created; so also it is
not inconsistent to have a policy disfa-
voring the impingement of certain types
of liens upon exemptions, whether feder-
al- or state-created. *We have no basis
for pronouncing the opt-out policy abso-
lute, but must apply it along with what-
ever other competing or limiting poli-
cies the statute contains.*

*Id.* (emphasis added). With this holding,
*Owen* specifically or effectively abrogated
the Sixth Circuit's decisions favoring
states' unfettered discretion to draft con-
flicting exemption statutes. *Id.* at 310, n.
1, 111 S.Ct. 1833 (abrogating *In re Pine,*
717 F.2d 281 (6th Cir.1983) and *In re
McManus,* 681 F.2d 353 (5th Cir.1982)
upon which *Pine* strongly relied).[16]

*Owen*'s language and logic support the
courts concluding that a "state's ability to
define its exemptions is not absolute and
must yield to conflicting policies in the
Bankruptcy Code." *Weinstein,* 164 F.3d at
683. Although § 522(b) allows states to
opt out of § 522(d) and thereby define
what property a "debtor may exempt from
property of the estate," this does not mean
that a state can opt out of the remainder of
§ 522 or keep conflicting state exemption
limitations fully operative in bankruptcy.
*Pursley,* 2014 WL 293557, at *6.

This is especially true when a state ex-
cludes certain prepetition debts, but not
others, from the protection of an exemp-
tion. As noted before, the Bankruptcy

Code has already enumerated specific debt
exceptions from exemptions in 11 U.S.C.
§ 522(c). The language of § 522(c) is un-
equivocal stating that, besides the specific
exceptions[17] provided, "property exempted
... is not liable ... for any debt ... that
arose ... before the commencement of the
case." 11 U.S.C. § 522(c). It does not
state or imply that opt-out states can aug-
ment § 522(c) with their own state-created
exceptions to exemptions nor is that pro-
vided for within the opt-out provision of
§ 522(b). *See Pursley,* 2014 WL 293557,
at *6–7; *In re Boucher,* 203 B.R. 10, 13
(Bankr.D.Mass.1996).

Buttressing this interpretation of
§ 522(c), that exemptions apply uniformly
to all prepetition debts, are two other criti-
cal bankruptcy policies. First, the import
of § 522(c), that certain property be pre-
served for the debtor against all prepeti-
tion debts with very limited exception, is a
codification of the Bankruptcy Code's fun-
damental policy of providing debtors with
a fresh start. *Pursley,* 2014 WL 293557,
at *6; *Leicht,* 222 B.R. at 680 ("In the
exemption arena, federal courts have, time
and again, concluded that the federal fresh
start principles promulgated in § 522(c)
override state law exemption limitations,
even definitional limitations"). Second is
the very critical notion that that there
must be equality of treatment and distri-
bution to creditor classes. See 11 U.S.C.
§ 726(b); *Scott,* 199 B.R. at 593 (allowing
states to opt out, as § 522(b) expressly
permits, while giving full effect to the re-
maining provisions of § 522 "furthers the
overall policy goals of the bankruptcy pro-

---

16. The Sixth Circuit's *Brooks* decision fol-
lowed *Pine*'s interpretation of § 522(f) and,
consequently, is no longer good law in light of
*Owen.* 817 F.2d 104, 1987 WL 37210 at *2–3.

17. The exceptions in § 522(c) include: 1) cer-
tain taxes or customs duties; 2) certain do-
mestic obligations; 3) liens that cannot be

avoided; 4) tax liens; 5) certain nondis-
chargeable debts owed to federal depository
institutions; and 6) debts in connection with
fraud in the obtaining of scholarships, grants,
loans or certain other types of financial assis-
tance for higher education. 11 U.S.C.
§ 522(c); *Weinstein,* 164 F.3d at 679.

cess such as ensuring uniformity under a federal distribution scheme, providing a debtor with a fresh start, and treating classes of creditors equally"). As discussed earlier, applying the Ohio homestead exemption in the manner suggested by the Trustee would foster unequal treatment of similarly situated creditors. Administrative costs and complexities aside, tolerating multiple tiers of debts within the same class with disparate treatment as defined by state exemption statutes strikes at the heart of federal bankruptcy law.[18]

In light of *Owen*, the plain language of § 522(c), and the critical bankruptcy policies implicated, this court agrees with the majority of courts as to the scope of § 522(b). That section specifically allows states to opt out of the federal exemptions set forth in § 522(d) and gives them broad discretion in defining their nature and amount. However, subsection (c) and the other subsections of § 522 apply independently to all exemptions, whether of state or federal origin, and built in limitations to state exemptions must yield to these bankruptcy provisions. *Weinstein*, 164 F.3d at 683; *Pursley*, 2014 WL 293557, at *6; *Boucher*, 203 B.R. at 13 ("In light of the clear command of section 522(c) and the pre-emptive power of Congress under its constitutional authority to establish uniform bankruptcy laws, congressional approval of the use of state exemptions cannot be taken to extend to exemptions that protect debts left unprotected by section 522(c)"); *Leicht*, 222 B.R. at 676 ("once exemptions are invoked in a bankruptcy proceeding, § 522(c) dictates the extent to which the exempt property may be called to answer for prebankruptcy debts").

The court now returns to the uncodified "claims accruing" language adopted by the Ohio General Assembly. Applying it in the Debtor's bankruptcy case in the manner espoused by the Trustee, would cause certain unsecured debts (those "accruing" before the March 27, 2013 effective date), to be excepted from the Debtor's claimed Amended Homestead Exemption effectively leaving the Debtor's exempt property liable to certain prepetition debts but not others in a manner that is not proscribed by § 522(c). The court concludes that this application of Ohio law conflicts with this Bankruptcy Code provision and is preempted.

### CONCLUSION

For the reasons stated above, the Chapter 7 Trustee's Objections to Debtor's Claimed Exemption in Real Estate (docs. 18, 24) are **OVERRULED.**

**SO ORDERED.**

---

18. Some courts have held that the best way to give effect to a state exemption exclusion that creates multiple tiers of creditors in bankruptcy without running afoul of the pro rata disbursement requirement is to collect the funds from the debtor as if the exclusion applied (essentially reducing the exemption by the amount owed to the excluded creditors), but then disbursing the funds to all creditors pro rata according to ordinary bankruptcy priorities. *See, e.g., In re Fishman*, 241 B.R. 568, 574–75 and n. 2 (Bankr.N.D.Ill.1999). The court respectfully disagrees with this approach as an artificial alteration of state law that no longer complies with the language or purpose of a state exemption that excludes specified creditors from its application.