**IN RE: Michael Cem GOKAY, Nilesen S. Gokay, Debtors**

**Case No. 14–30703**

United States Bankruptcy Court, S.D. Ohio, Western Division, **at Dayton.**

Signed August 14, 2015

---

**5.** Ally Financial did not file an Appellee Brief in response to the Whites' appeal, a practice that is not encouraged.

John Paul Rieser, Dayton, OH, for Debtors.

## Decision Granting Debtors' Motion to Avoid Judgment Lien of the State of Ohio

Guy R. Humphrey, United States Bankruptcy Judge

### I. Introduction

This matter is before the court on the Motion to Avoid Judicial Lien on Real Estate (doc. 12) and the objection filed by the State of Ohio (doc. 16). The parties also filed additional memoranda concerning the issues presented by the motion (docs. 42, 64 and 65). The issues presented by the motion are whether Ohio Revised Code § 2329.661(A)(4) precludes the debtors' use of their Ohio homestead exemptions to avoid the State's judgment lien pursuant to Bankruptcy Code § 522(f); and if so, whether the debtors may avoid

some or all of the State's judgment lien through their wildcard exemption.

## II. Jurisdiction, Factual and Procedural Background, and Positions of the Parties

### A. *Jurisdiction*

No party has contested the jurisdiction of the court or its authority to enter a final judgment in this proceeding. The court finds that it has jurisdiction pursuant to 28 U.S.C. § 1334, this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (K) and (O), and that it has the constitutional authority to enter final judgment over this contested matter.

### B. *Factual and Procedural Background*

Michael and Nilesen Gokay (the "Gokays") borrowed money from the Ohio Department of Developmental Services (the "State") for their business. The Gokays and their business entity defaulted on the loan, the State obtained judgment against the Gokays, and on January 27, 2014, the State recorded a certificate of judgment in the amount of $696,263.04, which serves as a lien against the Gokays' residence located in Dayton, Ohio.[1]

The Gokays filed this Chapter 7 bankruptcy on March 7, 2014. The Gokays' original Schedule A stated that the value of the residence was $307,200, with a $291,666 secured claim against it on the date of the filing of their bankruptcy case (doc. 1). The Gokays did not assert an exemption in the residence on Schedule C in their original filings (doc. 1).[2] Schedule D reflects a debt owed to the State of Ohio Developmental Services Agency (the "State") in the amount of $696,263.04.

The Gokays filed a motion seeking to avoid the State's judgment lien as having impaired their homestead exemption provided by Ohio Revised Code § 2329.66(A)(1) (doc. 12). The State filed a memorandum in opposition (doc. 16).

Subsequently, the Gokays filed an amended Schedule A which states that the value of the residence is $288,000, again listing a secured claim of $291,666 against the property (doc. 39). This value also corresponds with an appraisal report which the Gokays filed on July 31, 2014 (doc. 38). Also, the Gokays filed an amended Schedule C which asserted a homestead exemption in the residence in the amount of $15,534 pursuant to § 2329.66(A)(1) and a wildcard exemption in the residence in the amount of $20 pursuant to Ohio Revised Code § 2329.66(A)(1 8) (doc. 39). The State disputes the Gokays' $288,000 value placed on the residence, arguing that the $307,200 value described by the Gokays' original Schedule A and the Montgomery County, Ohio, Auditor's 2011, 2012, and 2013 value amounts the Gokays could have claimed had there been no liens on the property. In addition, the exemptions available to debtors apply to each debtor individually and, thus, each of the Gokays would be entitled to a separate homestead exemption. See 11 U.S.C. § 522(m) (exemptions to be applied separately with respect to each debtor in a joint case). However, since the availability of separate homestead exemptions does not affect the result in this case, for simplicity, the court refers to the Gokays' homestead exemptions singularly.

---

1. There is no dispute that the State's lien is a judicial lien as that term is used in 11 U.S.C. § 522(f) and as defined by 11 U.S.C. § 101(36) ("lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding.").

2. As will become apparent in the legal analysis below, the Gokays' failure to claim a homestead exemption in their original Schedule C or the amount of the exemption actually claimed in subsequent amendments to Schedule C is not material because the application of § 522(f)(1) rests upon the exemption

of $312,720 are "more likely to be reflective of the true value of the real property[.]" (doc. 64).

## C. *Positions of the Parties*

The Gokays insist that they are entitled to the homestead exemption and that it applies to the State's judgment lien, with 11 U.S.C. § 522(f) permitting the avoidance of the State's judgment lien as impairing their homestead exemption. They argue that subsection (c) of § 522 is at the heart of debtors' fresh start and that, combined with subsection (f), Congress' intent in providing debtors a fresh start free from judgment liens is clearly evinced. The Gokays assert that Ohio Revised Code § 2329.661(A)(4) contravenes and is preempted by § 522(f)(1). They further argue that even if the homestead exemption does not apply due to § 2329.661(A)(4), that provision does not protect the State's judgment from being avoided as impairing their wildcard exemption.

The State does not appear to dispute that the Gokays would be entitled to the homestead exemption as to the bankruptcy trustee and all other creditors holding judgment liens. However, the State argues that it legitimately carved out of the Ohio homestead exemption judgment liens obtained by the State. The State contends that, in allowing the states to opt out of the federal exemptions provided by the Bankruptcy Code, Congress has given Ohio the discretion to define the scope of its exemptions as it deems appropriate. Ohio has chosen to set the parameters of the Ohio homestead exemption so as to apply it to all judgment liens except judgment liens of the State, its agencies, and its political subdivisions. The State claims that, by definition, the Ohio homestead exemption does not apply to judgment liens held by the State and its political subdivisions and agencies and, therefore, its judgment lien cannot impair the Go-

kays' homestead exemption. In sum, the State explains that because Ohio has defined the homestead exemption in a manner to exclude its own judgment liens from coverage of that exemption, the lien avoidance mechanism is not applicable because the debtors "would [not] have been entitled under subsection (b) [of § 522]" to a homestead exemption as relates to the State judgment lien. 11 U.S.C. § 522(f)(1).

## III. Legal Analysis

### A. *Introduction*

The determination of the applicability of §§ 2329.66(A)(1) and 2329.661(A)(4) and § 522(f)(1)(A) under the circumstances of this case present a difficult question concerning the extent to which Congress intended to permit the "opt out" states to define their exemptions versus the extent to which Congress intended to give debtors a fresh start through the ability to avoid judgment liens under § 522(f)(1). The issue as relates to these Ohio statutes appears to present a case of first impression. However, in the end, the court determines that the Supreme Court's decision in *Owen v. Owen*, 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991) is dispositive and supports the Gokays' avoidance of the State's judgment lien in its entirety.

Any issue as to the application of the Gokays' wildcard exemption is rendered moot as a result of the court's determination as to the Gokays' homestead exemption. Accordingly, the court will not address application of the wildcard exemption.

### B. *Exemption Law and Avoidance of Judgment Liens*

### 1. *Bankruptcy and State Exemptions and Ohio as an "Opt Out" State*

Section 522 is the general section of the Bankruptcy Code which describes debtors'

ability to exempt certain property interests from their bankruptcy estates, saving those interests from liquidation for the payment of their unsecured creditors. See *Owen,* 500 U.S. at 305, 111 S.Ct. 1833. Subsection (b) provides, in pertinent part, as follows:

> (b)(1) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection. . . .
>
> (2) Property listed in this paragraph is property that is specified under subsection (d), unless the State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize.

11 U.S.C. § 522(b) (emphasis added). As permitted by § 522(b)(2), Ohio has expressly opted out of the federal bankruptcy exemptions provided in § 522(d), stating that: "Pursuant to the 'Bankruptcy Reform Act of 1978,' 92 Stat. 2549, 11 U.S.C. 522(b)(1), this state specifically does not authorize debtors who are domiciled in this state to exempt the property specified in the 'Bankruptcy Reform Act of 1978,' 92 Stat. 2549, 11 U.S.C. 522(d)." Ohio Revised Code § 2329.662. See *In re Kyle,* 510 B.R. 804, 808 (Bankr.S.D.Ohio 2014) (Walter, J.) (explaining that pursuant to § 2329.662, Ohio is an opt-out state).

It has been stated that the "opt-out" states were given wide discretion and broad authority to define their exemptions. Thus, the Court of Appeals for the Sixth Circuit has adopted the following statement:

> The unambiguous language of section 522(b) implicitly indicates a state may exempt the same property included in the federal laundry list [§ 522(d)], more property than that included in the federal laundry list, or less property than that included in the federal laundry list. The states also may prescribe their own requirements for exemptions, which may either circumscribe or enlarge the list of exempt property.

*Rhodes v. Stewart (In re Rhodes),* 705 F.2d 159, 163 (6th Cir.1983) (quoting *In re McManus,* 681 F.2d 353, 355-56 (5th Cir. 1982) (abrogated on other grounds by *Owen* ). *See also Granger v. Watson (In re Granger),* 754 F.2d 1490, 1492 (9th Cir. 1985) ("state that has opted out [of the federal exemption scheme] has considerable freedom in creating exemptions and eligibility requirements for those exemptions").[3] In discussing § 522, the Supreme Court stated: "Nothing in subsection (b) (or elsewhere in the Code) limits a State's power to restrict the scope of its exemptions; indeed, it could theoretically accord no exemptions at all." *Owen,* 500 U.S. at 308, 111 S.Ct. 1833. However, later in *Owen,* the Supreme Court did qualify this statement—stating that the "opt-out policy" was not absolute, but rather, must be applied "with whatever other competing or

---

**3.** State exemption statutes giving preference to certain kinds of debts have been upheld as being within this broad authority which states have to create and define their exemptions. See *In re Ondras,* 846 F.2d 33 (7th Cir.1988) (upholding preference under Indiana exemption statute given to tort debts); and *In re Godfrey,* 93 B.R. 451 (Bankr.E.D.Va.1988) and *In re Shines,* 39 B.R. 879 (Bankr.E.D.Va. 1984) (both upholding a Virginia statute giving preference to debts for rents owed). However, the continuing vitality of these decisions has come into question following the Supreme Court's decision in Owen. See *In re Scott,* 199 B.R. 586, 594 (Bankr.E.D.Va. 1996). In addition, Judge Walter found that Owen abrogated *Giles v. Credithrift of Am., Inc. (In re Pine),* 717 F.2d 281 (6th Cir.1983) and *In re McManus,* 681 F.2d 353 (5th Cir. 1982), decisions favoring the states' ability to draft exemption statutes which conflict with provisions of the Bankruptcy Code. *Kyle,* 510 B.R. at 818.

limiting policies" the Bankruptcy Code provides. *Id.* at 313, 111 S.Ct. 1833. As Judge Walter recently held:

> *Owen's* language and logic support the courts concluding that a "state's ability to define its exemptions is not absolute and must yield to conflicting policies in the Bankruptcy Code." *Weinstein,* 164 F.3d at 683. Although § 522(b) allows states to opt out of § 522(d) and thereby define what property a "debtor may exempt from property of the estate," this does not mean that a state can opt out of the remainder of § 522 or keep conflicting state exemption limitations fully operative in bankruptcy. · [*In re*] *Pursley,* 2014 Bankr. LEXIS 314, 2014 WL 293557, at *6 [ (Bankr.N.D.Ohio Jan. 23, 2014) ].

*Kyle,* 510 B.R. at 818.

The significance of property being exempted from the bankruptcy estate is set forth in subsection (c) which provides, as relevant to this case, that:

> (c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except—
>
> \* \* \*
>
> (2) a debt secured by a lien that is—
>> (A) (i) *not avoided under subsection (f)* ... of this section ... of this title ... [.]

11 U.S.C. § 522(c)  (emphasis added). Thus, if property is not secured by a lien and is fully exempt, the debtor may retain that property free from claims of the trustee and creditors. However, § 522(c)(2)(A)(i) provides for an important exception to the rule that property otherwise exempt from creditors is still subject to the claims of secured creditors.

Subsection (f) of § 522 furthers the goal of the Bankruptcy Code of providing debtors with a fresh start from their financial woes by allowing debtors to set aside judgment liens which impair their exemptions. It provides that:

> (1) Notwithstanding any waiver of exemptions ..., the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
>> (A) a judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523(a)(5);[4]

To implement this lien avoidance provision, § 522(f)(2)(A) provides a mathematical formula for determining whether a lien impairs an exemption:

> (A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—
>
>> (i) the lien;
>>
>> (ii) all other liens on the property; and
>>
>> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
>
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. § 522(f)(2)(A). The Sixth Circuit explained how this formula works in *Brinley v. LPP Mortgage Ltd. (In re Brinley),* 403 F.3d 415, 421 (6th Cir.2005). See *also In re Bowshier,* 389 B.R. 542, 546 (Bankr.S.D.Ohio 2008) (reviewing the

---

**4.** Congress has excepted two types of judgments from avoidance under § 522(f): judgments securing domestic support obligations (11 U.S.C. § 522(f)(1)(A)) and mortgage foreclosure judgments (11 U.S.C. § 522(f)(2)(C)).

*Brinley* analysis). The application of *Brinley* to the formula in this case is set forth below in section III. C. 1.

## 2. *The Ohio Homestead Exemption*

In 2012, through House Bill 479 ("H.B. 479"), the Ohio legislature significantly increased the Ohio homestead exemption provided by § 2329.66(A)(1), raising it to $125,000 for each debtor.[5] The provisions of H.B. 479 became effective on March 27, 2013. Section 2329.66(A)(1) specifically provides that: "Every person who is domiciled in this state may hold exempt from a judgment lien created pursuant to division (A)(1)(a) of this section the person's interest, not to exceed one hundred twenty-five thousand dollars, in the exempted property." However, also through H.B. 479, the legislature added § 2329.661(A)(4), which provides that "Division (A)(1) of section 2329.66 of the Revised Code [the Ohio homestead exemption] does not ... [i]mpair a lien for the payment of taxes, debts, or other obligations owed to this state or any agency or political subdivision of this state ...." Ohio Revised Code § 2329.661(A)(4). Thus, while the amount of the Ohio homestead exemption was significantly increased in 2012 to protect debtors' interests in their homes from judgment liens of other creditors, the State also sought to expressly protect its own liens, apparently of any nature, from application of that increased Ohio homestead exemption. The State argues that this newly enacted provision applies to protect its judgment liens from the home-

stead exemption and particularly application of the homestead exemption through avoidance of its judgment lien under § 522(f). Of note is that in enacting this provision protecting judgments of the State from impairing the Ohio homestead exemption, the State used the same basic language as used in § 522(f)(1)(A), but only in reverse. Section 522(f)(1)(A) provides for the avoidance of judicial liens which impair an exemption to which the debtor is entitled, including the homestead exemption; while § 2329.661(A)(4) provides for the nullification of the Ohio homestead exemption to the extent that it impairs a lien held by the State or any agency or political subdivision of the State.

## C. *Application of the Gokays' Homestead Exemption*

The State's argument that § 2329.661(A)(4) precludes the Gokays' use of the Ohio homestead exemption to avoid the State's judgment lien through § 522(f)(1) fails for at least four related reasons: 1) a plain meaning reading of § 522(f)(1) provides for the avoidance of the State's judgment; 2) the State's argument contravenes Congressional policy as embodied in § 522(f); 3) to the extent § 522(f)(1) and § 2329.661(A)(4) conflict, the state statute is preempted by the federal statute; and 4) the Supreme Court's decision in Owen compels the granting of the Gokays' § 522(f) motion to avoid the State's judgment lien so that they may use their homestead exemption.

---

**5.** In addition, Ohio law provides for adjustment of this exemption amount:

(B) On April 1, 2010, and on the first day of April in each third calendar year after 2010, the Ohio judicial conference shall adjust each dollar amount set forth in this section to reflect the change in the consumer price index for all urban consumers, as published by the United States department of labor, or, if that index is no longer published, a generally available comparable index, for

the three-year period ending on the thirty-first day of December of the preceding year. Ohio Rev.Code § 2329.66(B). The adjusted dollar amounts do not appear in the text of the statute; however, that information may be accessed by visiting the Ohio Judicial Conference website. Ohio Judicial Conference, http://www.ohiojudges.org/ (follow "Exemptions" hyperlink). At the time the Gokays filed their bankruptcy petition, the adjusted dollar amount for each debtor was $132,900.

**1.** *Application of § 522(f)(1) to the State Judgment Lien The formula defining impairment provides:*

The formula defining impairment provides:

...a [judicial] lien shall be considered to impair an exemption to the extent that the sum of—(i) the judicial lien; (ii) all other liens on the property; and (iii) the amount of the exemption that the debtor could claim if there were no liens on the property, exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. § 522(f)(2)(A). The State does not dispute that its judgment lien qualifies as a judicial lien as that term is defined by § 101(36).[6] Second, the formula is focused on the amount of the exemption which the debtor could claim *in the absence of liens.*

Applying the formula to the State's judgment lien, as the Sixth Circuit stated in *Brinley,* must be done in literal conformity with the text·of the statute. Accordingly, the computation of the impairment to the Gokays' homestead exemption resulting from the State's judgment lien is as follows:

| | |
|---|---|
| State of Ohio Judgment Lien: | $696,263.04 |
| Mortgage: | $291,666.00 |
| Exemption Gokays could claim absent liens on the property: | $265,800.00[7] |
| Total of Liens & Exemptions: | $1,253,729.04 |
| Value of Gokays' Interests in the Property: | $288,000.00 |
| Amount by which total of liens & exemption Exceeds value of debtors' interest: | $965,729.04 |

Under the formula provided by § 522(f)(2)(A), the State's judgment lien impairs the Gokays' homestead exemption

in the full amount of the State's judgment lien—$696,263.04. That conclusion is the same regardless of whether the Gokays' value for the property is used or the State's highest suggested value is used.[8]

**6.** This decision only addresses "judicial liens" held by the State and its agencies and political subdivisions and does not address and has no applicability to other liens which those entities may hold, such as statutory liens, security interests, or mortgage liens. *See* 11 U.S.C. § 101(53) (defining statutory lien) and 11 U.S.C. § 101(51) (defining "security interest."). *See also Markle v. Wayne S&L Co.,* 1999 WL 547443, at *3, 1999 Ohio App. LEXIS 3182, at *9–10 (Ohio Ct.App. June 29, 1999) ("[A] mortgage lien is not a judicial lien. A judicial lien, unlike a mortgage lien, is obtained involuntarily by judgment, levy, sequestration, or other legal or equitable process or proceeding as provided for in Bankruptcy Code Section 101. A mortgage lien is a consensual lien."). Mortgage and statutory mechanics' liens have traditionally been excepted from the application of Ohio's homestead exemption. See Ohio Rev. Code § 2329.661(A)(1)-(3).

**7.** This number represents the adjusted dollar amount of $132,900 for each of the Gokays under § 2329.66(A)(1). There is no dispute that the Gokays could claim the homestead exemption under § 2329.66(A)(1) if there were no lien on their residence.

**8.** This is the value urged by the Gokays. Assuming the highest number suggested by the

As such, the State's judgment lien would be fully avoidable under the formula as provided by § 522(f)(2)(A) and *Brinley*.

### 2. Construction of § 522(f)

The crux of the parties' arguments concerning the homestead exemption is whether the State's lien may impair the Gokays' homestead exemption notwithstanding the State's attempt by statute to define impairment in such a way as to exclude its own liens. The State urges that the formula provided by § 522(f)(2)(A) does not apply to its lien because Ohio, through § 2329.661(A)(4), has carved out its own liens, including judgment liens, from the increased Ohio homestead exemption. This argument fails for several reasons.

First, the formula applies to define "impairment" under the Bankruptcy Code— state law does not apply to define impairment. *Brinley*, 403 F.3d at 421 ("[T]his court has already 'expressly stated that § 522(f)(2)(A) is a federal definition of impairment ... and, in light of [its] explicit language, we no longer look to state law to define impairment.' " (quoting *In re Northern*, 294 B.R. 821, 830–31 (Bankr. E.D.Tenn.2003)). As stated by the Court of Appeals for the Eighth Circuit:

> To be sure, the Bankruptcy Code usually looks to state law to define the property rights and priorities of creditors, including secured creditors. But § 522(f) is an exception to that policy. It was enacted to permit the avoidance of judicial liens that can interfere with the debtor's post-petition fresh start. This selective avoidance gives an advantage under federal law to secured creditors holding consensual liens, typically, residential mortgage lenders. But Congress intended to treat consensual lien-

holders more favorably, because their contractual relationships with the bankruptcy debtor typically allow the debtor to acquire equity in the exempt property by making post-petition mortgage payments. The 1994 amendment creating the statutory formula here at issue was expressly aimed at overruling prior judicial decisions compromising that intent.

*Kolich v. Antioch Laurel Veterinary Hosp. (In re Kolich)*, 328 F.3d 406,410 (8th Cir. 2003).

■ Section 522(f)(2)(A) specifically states that the judicial lien (in this case the State's judgment lien) and all other liens must be considered and that the homestead exemption that would be available to the debtors absent any liens is added to the total of the liens on the property. Even in this case, the State cannot argue that absent any liens on the Gokays' residence, including the State's judgment lien, the Gokays would not be entitled to their respective homestead exemptions in the property. Thus, regardless of how the State defines the contours of the homestead exemption, the formula provided by § 522(f)(2)(A) applies to determine "impairment" of the homestead exemption and here the State judgment lien impairs the Gokays' respective homestead exemptions. There can be no state "work around" § 522(f)—the Bankruptcy Code trumps state law in defining impairment of an exemption.

■ As recently noted by the Court of Appeals for the Second Circuit in a similar case in which the State of New York had significantly increased its homestead exemption, "§ 522(f) allows a debtor to avoid a judgment lien in bankruptcy to the extent that the lien impairs an exemp-

---

State, $312,720 (See doc. 64, p. 3), the State's judgment lien would still impair the Gokays' homestead exemption in the full amount of the judgment lien—$696,263.04. The final calculation in that case would just be slightly different: $1,253,729.04–$312,720 = $941,009.04.

tion to which the debtor would be entitled in the absence of the lien." *Bulan v. Calloway (In re 1256 Bertel Ave. Assoc., LLC)*, 761 F.3d 252, 265 (2d Cir.2014). Likewise, in a case determining that debtors do not need to list an exemption on their Schedule C in order to avoid a judicial lien as impairing that exemption, a court noted the Supreme Court's statement in Owen:

> To determine the application of § 522(f) [courts] ask not whether the lien impairs an exemption to which the debtor is in fact entitled, but whether it impairs an exemption to which he <u>would have been</u> entitled but for the lien itself.

> As the preceding [underlined] words suggest, this reading is more consonant with the text of § 522(f)—which establishes as the baseline, against which impairment is to be measured, not an exemption to which the debtor "is entitled," but one to which he "would have been entitled."

*Botkin v. DuPont Cmty. Credit Union*, 650 F.3d 396, 400 (4th Cir.2011) (citing *Owen*, 500 U.S. at 310–11, 111 S.Ct. 1833) (emphasis in original and footnote omitted). As the court pointed out, the legislative reports accompanying the Bankruptcy Reform Act of 1978 also note that the focus is not on the exemption which the debtor may take with the existence of the lien, but rather, the exemption to which the debtor would be entitled in the absence of the lien. See H.R.Rep. No. 95–595, at 362 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6318 ("The debtor may avoid a judicial lien on any property to the extent that the property *could have been* exempted in the absence of the lien." (emphasis added)); S.Rep. No. 95–989, at 74 (1978), *as reprinted* in 1978 U.S.C.C.A.N. 5787, 5862 (same). *Botkin*, 650 F.3d at 400, n. 2.

In a pre-Owen decision, the Court of Appeals for the Eleventh Circuit rejected an argument similar to the argument being made by the State in this case. In that case creditors argued that the Georgia Legislature defined the exemptions in question in a manner which prevented the debtors from using § 522(f) to avoid their nonpossessory, purchase money security interests. Specifically, they contended that Georgia law only permitted a debtor to exempt property if it is not encumbered by a lien. In rejecting that argument, the Eleventh Circuit stated:

> [T]he very purpose of the statute is to permit debtors to claim, as exempt, property completely or partially secured by an otherwise valid lien. To permit states to inhibit the operation of the lien-avoidance provision simply by defining all lien-encumbered property as "not exempt" would render the statute useless, a result inconsistent with the well-established principle of statutory construction requiring that all parts of an act be given effect, if at all possible.

*Hall v. Fin. One of Ga. (In re Hall)*, 752 F.2d 582, 586 (11th Cir.1985) (overruled on other grounds by *Fin. One v. Bland (In re Bland)*, 793 F.2d 1172 (11th Cir.1986) (en banc)). In that case the court affirmed the bankruptcy court's avoidance of nonpossessory, nonpurchase money security interests in the debtor's household goods. See *also Aetna Fin. Co. v. Leonard (In re Leonard)*, 866 F.2d 335, 338 (10th Cir. 1989) (federal law determines availability of lien avoidance).

Accordingly, as a matter of pure statutory construction, the State's argument must be rejected.

### 3. *Conflict Preemption*

Enforcement of § 2329.661(A)(4) in a bankruptcy case would preclude the Gokays' ability to exercise their rights under § 522(f)(1). For this reason, it is preempted under a federal conflict preemption analysis.

■ There are three different types of preemption of state law by federal law under the Supremacy Clause of the United States Constitution: 1) express preemption; 2) field preemption and 3) conflict preemption. *Pertuso v. Ford Motor Credit Co.,* 233 F.3d 417, 425 (6th Cir.2000). The first two types are not relevant to this case.

■ Conflict preemption is "where it is impossible to comply with both federal and state law, or where state law stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress." *Id.* at 425 (citing *Bibbo v. Dean Witter Reynolds, Inc.,* 151 F.3d 559, 562–63 (6th Cir.1998)). See *also Chrysler Group LLC v. Fox Hills Motor Sales, Inc.,* 776 F.3d 411, 424 (6th Cir.2015) ("Conflict preemption occurs when a state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'") (citations omitted). Stated another way, "[i]f the purpose of the act cannot otherwise be accomplished—if its operation within its chosen field ... must be frustrated and its provisions be refused their natural effect— the state law must yield to the regulation of Congress." *Id.* (citing *Savage v. Jones,* 225 U.S. 501, 533, 32 S.Ct. 715, 56 L.Ed. 1182 (1912)).

In *Pertuso,* the Sixth Circuit emphasized the "exclusively federal nature of bankruptcy proceedings." 233 F.3d at 425. The court noted the Constitution's grant to Congress of the authority to establish "uniform Laws on the subject of Bankruptcies" and the "pervasive nature of Congress' bankruptcy regulation." *Id.* Quoting a Ninth Circuit decision, the court stated:

> While it is true that bankruptcy law makes reference to state law at many points, the adjustment of rights and duties within the bankruptcy process itself is uniquely and exclusively federal.

It is very unlikely that Congress intended to permit the superimposition of state remedies on the many activities that might be undertaken in the management of the bankruptcy process.

*Id.* (quoting in part *MSR Exploration, Ltd. v. Meridian Oil, Inc.,* 74 F.3d 910, 914 (9th Cir.1996)).

In *Kyle* this court reached a similar conclusion:

> Congress has plenary power to enact uniform federal bankruptcy laws. U.S. Const. art. 1, § 8, cl. 4; *Patriot Portfolio, LLC v. HarryWeinstein (In re Weinstein),* 164 F.3d 677, 682 (1st Cir. 1999). Consequently, "'[s]tates may not pass or enforce laws to interfere with or complement the Bankruptcy Act or provide additional or auxiliary regulations.'" *Weinstein,* 164 F.3d at 682–83 (quoting *International Shoe Co. v. Pinkus,* 278 U.S. 261, 265, 278 U.S. 261, 49 S.Ct. 108, 73 L.Ed. 318 (1929)). Inconsistent state laws are preempted by conflicting Bankruptcy Code provisions. *Id.*

510 B.R. at 815–16.

Because Congress has permitted states to opt out of the federal bankruptcy exemptions, the tension between state law and federal bankruptcy in the exemption area is great. As Judge Walter noted in *Kyle,* "considerable disagreement exists regarding the 'outer limits of a state law's ability to control an exemption's operative characteristics in the bankruptcy universe' especially when a state created exemption scheme conflicts with various aspects of the exemption framework in 11 U.S.C. § 522 or other provisions of the Bankruptcy Code." *Kyle* at 815–16, (citing *In re Betz,* 273 B.R. 313, 321 (Bankr.D.Mass. 2002)).

Section 522(f) and Ohio Revised Code § 2329.661(A)(4) cannot be construed to work together in harmony as pertains to judicial liens—they directly conflict—ei-

ther the Gokays can exercise their entitlement under § 522(f) to avoid the State judgment lien as expressly provided by § 522(f)(1) or the State may preclude the exercise of that entitlement through its ability to define the scope of its exemptions. There is no way to construe the State statute and the Bankruptcy Code statute to give effect to both.

Allowing the State to define Ohio's homestead exemption in a manner to exempt state judgments from the coverage of § 522(f)'s judicial lien avoidance stands as an obstacle to the accomplishment and execution of Congress' purpose and objectives in permitting bankruptcy debtors to avoid judicial liens which impair their exemptions. Congress' purpose and objective in providing this lien avoidance remedy is to give debtors a fresh start, free from the chains and shackles of preexisting debt. The United States Supreme Court has acknowledged that

> a central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy "a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt."

*Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (quoting *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230, (1934)). *See also Richardson v. Schafer (In re Schafer),* 689 F.3d 601, 616 (6th Cir.2012) (listing cases recognizing that "the goal of the Bankruptcy Code is to provide debtors in bankruptcy with a fresh start"). The Supreme Court has specifically linked the avoidance of judicial liens under § 522(f) to assuring debtors their fresh start:

> Section 522(f)(1), by its terms, extends this protection to cases involving the

fixing of judicial liens onto exempt property. What specific legislative history exists suggests that a principal reason Congress singled out judicial liens was because they are a device commonly used by creditors to defeat the protection bankruptcy law accords exempt property against debts. As the House Report stated:

> "The first right [§ 522(f)(1)] allows the debtor to undo the actions of creditors that bring legal action against the debtor shortly before bankruptcy. Bankruptcy exists to provide relief for an overburdened debtor. If a creditor beats the debtor into court, the debtor is nevertheless entitled to his exemptions." H.R.Rep. No. 95–595, *supra,* at 126–127, U.S.Code Cong. & Admin. News 1978, pp. 6087–6088.

*Farrey v. Sanderfoot,* 500 U.S. 291, 297–98, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991). *See also Holland v. Star Bank, N.A. (In re Holland),* 151 F.3d 547, 550 (6th Cir.1998) (quoting *In re Miller,* 198 B.R. 500, 505 (Bankr.N.D.Ohio 1996) ("if a judgment creditor [were] allowed to retain its lien on the real property of the debtor ... the debtor would likely be precluded from ever gaining any equity in the property, therefore impairing his fresh start.")).

■ As recognized in *Owen,* while the states have broad authority to legislate the parameters of their exemptions, they cannot do so in a manner which directly conflicts with the express terms and policies of the Bankruptcy Code. Section 2329.661(A)(4) stands as an obstacle to the accomplishment and execution of Congress' purpose and objectives by eliminating the Gokays' entitlement to avoid a judicial lien which impairs their homestead exemption, an entitlement which is expressly granted to them in § 522(f) to effectuate their fresh start.[9] For this rea-

---

9. In this case, the State seeks to continue to encumber the Gokays' residence with a

$696,263.04 judgment lien arising out of a

son, § 2329.661(A)(4) is preempted by § 522(f).

### 4. *Owen and Its Progeny*

Any question concerning whether states may enact exceptions to their exemptions to carve out liens from the reach of § 522(f) was resolved through the Supreme Court's decision in *Owen*. In addition, following Owen, a number of other courts have addressed issues as to whether particular state-enacted exceptions to exemptions trump § 522(f). The courts following *Owen* have uniformly concluded that § 522(f) prevails over any state exemption statute or exception to a state exemption which conflicts with § 522(f).

*Owen* involved a Florida residential condominium, which became encumbered with a judgment lien held by the debtor's ex-wife upon the debtor's purchase of the condo. In 1985, the Florida legislature expanded the state homestead exemption law to include condos. The debtor filed a bankruptcy which was closed following administration of the estate. The debtor then reopened the case to avoid the ex-wife's judgment lien. The bankruptcy court overruled the debtor's § 522(f)(1) motion, in a manner consistent with Florida state court decisions holding that the new condominium exemption did not apply to pre-existing judgment liens. The district court and the Eleventh Circuit Court of Appeals affirmed the bankruptcy court. The Supreme Court, however, reversed the lower courts.

In an 8–1 decision, Justice Scalia, writing for the majority, noted that:

> To determine the application of § 522(f) they ask not whether the lien impairs an exemption to which the debtor is in fact entitled, but whether it impairs an exemption to which he *would have been* entitled but for the lien itself.

As the preceding italicized words suggest, this reading is more consonant with the text of § 522(f)—which establishes as the baseline, against which impairment is to be measured, not an exemption to which the debtor "is entitled," but one to which he "would have been entitled." The latter phrase denotes a state of affairs that is conceived or hypothetical, rather than actual, and requires the reader to disregard some element of reality. "Would have been" but for what? The answer given, with respect to the federal exemptions, has been but for the lien at issue, and that seems to us correct.

*Owen*, 500 U.S. at 310–311, 111 S.Ct. 1833. Justice Scalia concluded that:

> On the basis of the analysis we have set forth above with respect to federal exemptions, and in light of the equivalency of treatment accorded to federal and state exemptions by § 522(f), we conclude that Florida's exclusion of certain liens from the scope of its homestead protection does not achieve a similar exclusion from the Bankruptcy Code's lien avoidance provision.

*Id.* at 313–14, 111 S.Ct. 1833.

A number of lower federal courts have addressed similar issues following *Owen*. They have uniformly held that § 522(f) trumps any attempt by states to carve out property as being nonexempt because they are the subject of a lien described by § 522(f)(1)(A) or (B). Thus, in *Tower Loan of Mississippi, Inc. v. Maddox (In re Maddox)*, 15 F.3d 1347 (5th Cir.1994), the court addressed whether a Chapter 13 trustee could avoid nonpossessory, nonpurchase money security interests under § 522(f)(1)(B). The court found that the Chapter 13 trustee had standing to avoid the lien under § 522(f) and went on to

loan made to the Gokays' defunct business      entity.

determine that *Owen* overruled its decision in *McManus*, 681 F.2d 353 (5th Cir.1982). In *McManus* the court had held that Louisiana law providing that chattels encumbered by liens were not exempt precluded the use of § 522(f)(1)(B) to avoid nonpossessory, nonpurchase-money security interests in household goods. The argument used by the creditors in that case was essentially the same as the argument which the State is making in this case—that the state carved out lien-encumbered property from being exempt and, therefore, the liens did not impair an exemption which the debtors could claim. The Fifth Circuit concluded that "although states remain free to define the property eligible for exemptions under § 522(b), the particular liens that may be avoided on that property are determined by reference to federal law; specifically, § 522(f) of the Bankruptcy Code." *Id.* at 1356. Every court that has considered this issue has concluded that *Owen* overruled the *McManus* line of cases. See *In re Kelly*, 133 B.R. 811, 813 (Bankr.N.D.Tex.1991) ("Central to *Owen's* analysis is the following proposition: although a state may elect what property is exempt under state law, federal law determines the availability of lien avoidance under § 522(f) of the Code."); *Barkely v. Tower Loan of Miss., Inc. (In re Kennedy)*, 139 B.R. 389, 396–97 (Bankr.N.D.Miss.1992) (fact that Mississippi excluded voluntary security interests from scope of its personal property exemption protection fails to achieve similar exclusion from § 522(f)); and *In re Wink*, 137 B.R. 297, 302 (Bankr.W.D.Wisc.1992) ("Wisconsin may not effectively 'opt out' of the federal lien avoidance provision by limiting its state-law exemptions to unencumbered property."). Accordingly, since § 522(f) allows avoidance of judicial liens, the State's judgment lien in this case may be avoided, despite the State's attempt to define the property as non-exempt due to the presence of the State's judgment lien.

Following Owen, the courts follow a "but for" analysis to determine whether a lien may be avoided. Thus, if the property would be exempt but for the lien and the lien is one described by § 522(f)(1), then the lien may be avoided so that the debtors may assert and be entitled to claim their exemption in that property. See *Kennedy*, 139 B.R. at 396 ("But for the voluntary nonpurchase-money security interests, the debtors could claim exemptions in their tangible personal property. Therefore, pursuant to § 522(f)(2), the security interests can be avoided to the extent that the debtors' exemptions are impaired."). See *also Wink*, 137 B.R. at 301 ("This Court fully agrees with the majority view as espoused by *Owen*—that the proper inquiry under that provision is whether a debtor would be entitled to an exemption but for the existence of the lien. If so, then that lien can be avoided.").

*Owen* and its progeny teach us that states may not except out from their exemptions property subject to the liens that may be avoided under § 522(f)(1). If the liens are liens described by § 522(f)(1), those liens may still be avoided by debtors such as the Gokays, despite a state's attempt to exclude such property from being impaired by the state's liens. Just as in Owen, the Gokays would be entitled to a homestead exemption but for the State judgment lien. Under such circumstances, *Owen* and it progeny direct that the State's judgment lien be avoided so that the Gokays may assert and enjoy their homestead exemption.

## IV. Conclusion

For the reasons stated in this Decision, the court finds that the State's judgment lien may be avoided in its totality as fully impairing the Gokays' homestead exemption available to them under § 2329.66(A)(1). The Gokays' motion to

avoid the State's judgment lien is granted. The court is contemporaneously entering an order consistent with this decision.

**IT IS SO ORDERED.**